OPINION
{¶ 1} Appellant, Thomas Totarella ("Totarella"), appeals his convictions in the Lake County Court of Common Pleas for kidnapping in violation of R.C 2905.01, a felony of the first degree, felonious assault in violation of R.C. 2903.11, a felony of the second degree, carrying concealed weapons in violation of R.C. 2923.12, and intimidation in violation of R.C. 2921.03, a felony of the third degree. Totarella was sentenced to serve a total of six and one-half years in the Lorain Correctional Institution in Grafton, Ohio.[1] For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On the night of November 23, 2001, Totarella spent the night with a female friend, Jill Holton ("Holton"), at a mutual friend's house in Willoughby, Ohio. The next morning, Totarella and Holton began to argue after Holton expressed her intention to return to her parents' house in Strongsville. Totarella and Holton left Willoughby driving each other's cars and came to Totarella's uncle's house on Regent Road in Wickliffe. They parked on the street with Holton's car in front of Totarella's car. There, Holton again told Totarella that she wanted to leave. Totarella became very upset and struck Holton on the side of the head. Totarella returned Holton's keys and told her to leave, but had secretly removed the ignition key. Both Totarella and Holton returned to their own cars. When Holton realized that she didn't have her ignition key, she went over to Totarella to ask for it. Totarella took Holton's head and smashed it against his car a couple of times and then returned the ignition key. Holton returned to her car and started it. At this point, Totarella drove his car into the driver's side door and front end of Holton's car.
 {¶ 3} Holton was now hysterical and crying. She exited her car through the passenger's side door and went and sat on the porch of Totarella's uncle's house. Totarella approached her, grabbed her by the arm, and told her to come with him. Holton did not resist and went with Totarella to his car. They entered the car and Totarella drove away.
 {¶ 4} At about eleven o'clock on the morning of November 24, 2001, Shirley Platko ("Platko") was returning to her home, next to Totarella's uncle's house, with her three children from visiting a friend. As Platko walked toward her house, she noticed Totarella arguing with Holton. Platko observed Holton trying to get her keys from Totarella. She observed Totarella put his arm around Holton's neck. At this point, Platko became scared and called to Totarella, whom she knew through his uncle, if he wanted her to call the police. Totarella shouted back that if Platko called the police, he would kill her. Platko, who was already on the phone with 9-1-1, went inside her house with the children, but continued to observe and report the confrontation between Totarella and Holton. She observed Totarella drive his car into Holton's car and she observed Holton and Totarella drive away together in Totarella's car.
 {¶ 5} At about 11:13 that morning, Patrolman Donald E. Johnson ("Johnson") of the Wickliffe Police Department received a dispatch that a neighbor was reporting an ongoing domestic dispute on Regent Road. While en route to Regent Road, the dispatcher further advised Patrolman Johnson that a vehicle had been driven into another vehicle on Regent Road, and that the man and the woman involved in the dispute had entered "a dark colored black Cadillac" and were traveling westbound on Regent Road. As Patrolman Johnson traveled northbound on Worden Road, he spotted Totarella's dark brown Cadillac DeVille with two occupants turning onto Worden Road from Regent Road. Patrolman Johnson pulled the Cadillac over. At this time, Patrolman Anthony N. Regnier ("Regnier") of the Wickliffe Police Department arrived on the scene. Patrolman Regnier took Holton back to Regent Road and questioned her about the events. Holton told Regnier that she wanted charges brought against Totarella. Patrolman Regnier radioed Patrolman Johnson what he had learned from Holton. Patrolman Johnson placed Totarella under arrest. During a patdown search, Patrolman Johnson discovered a switchblade knife in the front pocket of Totarella's pants.
 {¶ 6} Totarella assigns the following assignments of error:
 {¶ 7} "[1.] Defendant was denied due process of law when the court overruled defendant's motion to suppress.
 {¶ 8} "[2.] Defendant was denied due process of law when the court overruled his motion to dismiss the count of carrying a concealed weapon.
 {¶ 9} "[3.] Defendant was denied a fair trial when the court would not limit the use of defendant's prior conviction which was only an element of carrying a concealed weapon.
 {¶ 10} "[4.] Defendant was denied due process of law and his right of confrontation and cross-examination when the court would not allow cross-examination of Shirley Platko as to her mental conditions.
 {¶ 11} "[5.] Defendant was denied his constitutional right of confrontation and cross-examination when the court limited cross-examination of prosecution witness Jill Holton.
 {¶ 12} "[6.] Defendant was denied his constitutional right when the court permitted Jill Holton to read her statement to the jury.
 {¶ 13} "[7.] Defendant was denied a fair trial when he was seen in the presence of the jury accompanied by deputy sheriffs and the court did not take proper corrective action.
 {¶ 14} "[8.] Defendant was denied his sixth amendment right to counsel when the court unreasonably prohibited final argument by counsel.
 {¶ 15} "[9.] Defendant was denied due process of law and hissixth amendment right to present a defense when the court would not instruct on a lesser included offense of assault.
 {¶ 16} "[10.] Defendant was denied due process of law when the court would not instruct on a lesser included offense of unlawful restraint.
 {¶ 17} "[11.] Defendant was denied due process of law when the court overruled his motion for judgment of acquittal as to the offense of carrying a concealed weapon.
 {¶ 18} "[12.] Defendant was denied due process of law when his motion for judgment of acquittal as to intimidation was overruled.
 {¶ 19} "[13.] Defendant was denied due process of law when his motion for acquittal as to felonious assault was denied.
 {¶ 20} "[14.] Whether defendant was subjected to unconstitutional multiple punishments when he was separately sentenced for felonious assault and kidnapping."
 {¶ 21} In his first assignment of error, Totarella asserts that Patrolman Johnson's stop of his vehicle was unconstitutional. Johnson had not observed Totarella commit any crime or traffic violation prior to pulling Totarella over. Instead, Johnson relied solely on the dispatcher's relay of Platko's report of the incident, which Totarella describes as being from "an unknown individual whose credibility is unknown." This report, Totarella argues, did not provide Johnson with a reasonable suspicion of criminal activity to justify the stop. Accordingly, Totarella concludes, Johnson's stop was unconstitutional and the trial court erred by failing to suppress the evidence of the stop.
 {¶ 22} At a suppression hearing, the trial court acts as the trier of fact. Ravenna v. Nethken, 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses. Mills,62 Ohio St.3d at 366, citing State v. Fanning (1982), 1 Ohio St.3d 19,20. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls (1997), 118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v.Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 23} The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." For the purposes of the Fourth Amendment, "stopping an automobile and detaining its occupants constitutes a `seizure'." Delaware v. Prouse (1979), 440 U.S. 648, 653. The investigatory stop exception to the Fourth Amendment allows a police officer to "approach a person for purposes of investigating possibly criminal behavior." Terry v. Ohio
(1968), 392 U.S. 1, 22. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." State v. Williams
(1990), 51 Ohio St.3d 58, 61, quoting United States v. Cortez
(1981), 449 U.S. 411, 417. "[T]he police officer involved `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. at 60, quoting Terry,392 U.S. at 21.
 {¶ 24} "Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Maumeev. Weisner, 87 Ohio St.3d 295, 1999-Ohio-68, at paragraph one of the syllabus. The determination of whether a reasonable suspicion exists "involves a consideration of `the totality of the circumstances.'" Id. at 299, quoting Cortez, 449 U.S. at 417;State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. "A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." Id., at paragraph two of the syllabus. "A citizen-informant who is the victim of or witness to a crime is presumed reliable." State v. Livengood, 11th Dist. No. 2002-L-044, 2003-Ohio-1208, at ¶ 11 (citation omitted);State v. Claiborne (Jan. 24, 1997), 2nd Dist. No. 15964, 1997 Ohio App. LEXIS 195, at *7.
 {¶ 25} In the present case, we find Platko's report contained sufficient indicia of reliability to justify Patrolman Johnson's stop of Totarella. Contrary to Totarella's characterization of Platko as an unidentified informant, we agree with the trial court's description of Platko as an "identifiable" informant. Platko identified herself as a neighbor and provided the address of where the incident was occurring. Moreover, Platko was an eyewitness. The initial dispatch to Johnson informed him of an ongoing domestic dispute. Platko remained on the line with the dispatcher, and so was able to inform the dispatcher that Totarella had rammed Holton's car and that both of them had left the scene in his car. On these facts alone, we find that Platko's information justified a reasonable suspicion of criminal activity. Cf. Weisner, 87 Ohio St.3d at 301-302 (finding that a citizen-informant's report possessed sufficient indicia of reliability where the informant provided identifying information about himself, willingly continued contact with the dispatcher, and personally observed the events as they were occurring);State v. Abercrombie, 12th Dist. No. CA2001-06-057, 2002-Ohio-2414, at ¶ 16 (the report of "an identified citizen[-informant] who based her knowledge of the facts she described upon her own observation * * * merits a high degree of credibility and value, rendering it sufficient to withstand challenge without independent police corroboration").
 {¶ 26} In this case, there was also independent corroboration of Platko's information. Platko provided an accurate description of the car, the number of occupants, and the direction it was heading. The reliability of this information was confirmed when Johnson sighted a car matching that description in the location Platko indicated. For the foregoing reasons, the dispatch based upon Platko's information was sufficiently reliable to justify Johnson's investigatory stop. Totarella's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, Totarella challenges the constitutionality of R.C. 2923.12, the carrying concealed weapons statute. Totarella argues the statute prohibits an unreasonable amount of innocent activity. In Klein v. Leis,99 Ohio St.3d 537, 2003-Ohio-4779, the Ohio Supreme Court affirmed the constitutionality of R.C. 2923.12. Totarella's second assignment of error is without merit.
 {¶ 28} Under the third assignment of error, Totarella argues that the trial court erred by admitting, as evidence, a written stipulation that Totarella had been previously convicted of felonious assault in violation of R.C. 2903.11 and robbery in violation of R.C. 2911.02.
 {¶ 29} Pursuant to the third count of the indictment, Totarella was charged under R.C. 2923.12 with carrying concealed weapons for his possession of a switchblade knife. The degree of the crime of carrying concealed weapons is elevated when the offender has been previously convicted of an "offense of violence." R.C. 2923.12(D) provides, in relevant part: "Whoever violates this section is guilty of carrying concealed weapons, a misdemeanor of the first degree. If the offender previously has been convicted of a violation of this section or of any offense of violence, * * * carrying concealed weapons is a felony of the fourth degree." Both felonious assault and robbery are considered "offenses of violence" for the purpose of R.C. 2923.12(D). R.C.2901.01(A)(9)(a). Therefore, the carrying concealed weapons charge against Totarella was a felony of the fourth degree.
 {¶ 30} Where the existence of a prior conviction elevates the degree of an offense, the prior conviction is an essential element of that offense and must be proved as a matter of fact.State v. Allen (1987), 29 Ohio St.3d 53, at syllabus; State v.Henderson (1979), 58 Ohio St.2d 171, 173; State v. Gordon
(1971), 28 Ohio St.2d 45, paragraph one of the syllabus. Accordingly, "[t]he state must be put to its proof regarding the identity of the accused in the prior offense and must demonstrate the fact of such prior offense beyond a reasonable doubt."Gordon, 28 Ohio St.2d at 48. In this situation, it was not only proper that the state introduce some evidence of Totarella's prior convictions, but it was necessary that the state do so to obtain a conviction under the elements of the statute. State v.Payne (Mar. 31, 1999), 11th Dist. No. 97-L-248, 1999 Ohio App. LEXIS 1433, at *6, quoting State v. Smith (1990),68 Ohio App.3d 692, 695 ("Here, the prior offense is an essential element of the crime charged. Thus, its use is not only proper but required.").
 {¶ 31} Prior to trial, Totarella filed a Motion for a Separate Hearing on Prior Convictions, essentially a motion in limine, in which he asked, among other things, that the prior conviction element of the offense be stipulated to "without identifying the nature of the conviction or any details of the conviction." The trial court considered the matter on the morning of the trial. At this time, the state expressed its intention to prove the prior conviction element of the charge by having Totarella's parole officer testify. The court noted that the prior conviction was an element of the offense charged and that the state was entitled to introduce evidence on this element. Totarella's attorney responded that, since the trial court was inclined to allow testimony on this issue, Totarella would stipulate to the prior convictions.[2] Thereafter, the following stipulation was drafted and read to the jury at the beginning of the trial: "Thomas M. Totarella was previously convicted of an offense of violence, to-wit: Felonious Assault, a violation of O.R.C. § 2903.11, in the Cuyahoga County Common Pleas Court, Case No. CR308959, dated September 12, 1994; and Robbery, violation of O.R.C. § 2911.02, in the Cuyahoga County Common Pleas Court, Case No. CR309773, dated September 12, 1994." The stipulation was signed by Totarella, his attorney, and the prosecutor.
 {¶ 32} On appeal, Totarella argues that trial court erred by overruling his motion to limit the information about his prior convictions put before the jury and by informing the jury of his two prior convictions. Totarella relies on the United States Supreme Court's decision in Old Chief v. United States (1997),519 U.S. 172. The petitioner in Old Chief was charged under a federal statute prohibiting the possession of a firearm by anyone who has been convicted of "a crime punishable by imprisonment for a term exceeding one year." Id. at 174, citing18 U.S.C. § 922(g)(1). The petitioner offered to stipulate that he had been convicted of a crime punishable by imprisonment exceeding one year, arguing that the danger of unfair prejudice from revealing the name and nature of his prior conviction would outweigh its probative value. Id. at 175; Fed.R.Evid. 403. The United States attorney refused to join the stipulation and introduced at trial, over petitioner's objection, an order of judgment and conviction disclosing that the petitioner had been previously sentenced to five years' imprisonment for assaulting and causing serious bodily injury to another. Id. at 177.
 {¶ 33} The Supreme Court ruled that the lower court erred by admitting this evidence. The question was not one of relevance but rather "the scope of a trial judge's discretion under [Fed.Evid.] Rule 403, which authorizes exclusion of relevant evidence when its `probative value is substantially outweighed by the danger of unfair prejudice.'" Id. at 180. By offering to stipulate, the petitioner presented the trial court "alternative, relevant, admissible evidence of the prior conviction" that was "seemingly conclusive" of the prior conviction element of the statute. Id. at 186. The court reasoned: "The issue is not whether concrete details of the prior crime should come to the juror's attention but whether the name or general character of that crime is to be disclosed. Congress * * * has made it plain that distinctions among generic felonies does not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute. * * * The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun * * *." Id. at 190-191 (internal citations omitted). Since the petitioner's proposed stipulation provided a suitable evidentiary alternative to the order of judgment for petitioner's conviction without the risk of unfair prejudice inherent in the evidence of prior convictions, the trial court abused its discretion by not accepting petitioner's proffered stipulation. Id. at 191.
 {¶ 34} Ohio Rule of Evidence 403(A) provides that evidence, although relevant, "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice." "When considering evidence under Evid.R. 403, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of that discretion." State v.Allen, 73 Ohio St.3d 626, 633, 1995-Ohio-283, citing State v.Morales (1987), 32 Ohio St.3d 252, 257-258. An abuse of discretion consists of more than an error of law or judgment, rather it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169 (citation omitted).
 {¶ 35} In the present case, the trial court erred by admitting evidence of Totarella's prior convictions in the manner as stipulated. First, it was unnecessary to admit evidence of both of Totarella's prior convictions. To satisfy the prior conviction element of R.C. 2923.12(D), it was only necessary to prove one prior conviction. R.C. 2923.12(D) ("[i]f the offender previously has been convicted of * * * any offense of violence * * * carrying concealed weapons is a felony of the fourth degree"). The admission of evidence of a second conviction was redundant. It had no probative value and could only have had the effect of prejudicing Totarella in the eyes of the jury. In a factually similar case, this court has held that a trial court abuses its discretion by admitting evidence of multiple convictions when only one conviction is necessary to satisfy the elements of the offense. State v. Henton (1997),121 Ohio App.3d 501, 507-508 ("Because appellant offered to stipulate to the existence of a prior felony drug abuse conviction, the trial court abused its discretion when it rejected the stipulation and allowed the prosecution to present evidence of appellant's two prior drug trafficking convictions solely to prove the element of an offense which requires proof of a prior felony drug abuse conviction.") (emphasis sic).
 {¶ 36} Second, the trial court erred by unnecessarily including the name and nature of Totarella's prior convictions in the stipulation. As in the case of Old Chief, distinctions among offenses of violence do not matter for the purpose of elevating the degree of the offense of carrying concealed weapons. In this respect, a prior conviction for aggravated homicide is just as probative as a prior conviction for intimidation. The most the jury would need to know is that Totarella had stipulated to a conviction for a crime defined under the Revised Code as an "offense of violence." Old Chief,519 U.S. at 190-191. We cite with approval the Fifth District's decision in State v. Godbolt (Apr. 19, 1999), 5th Dist. No. 98CA00101, 1999 Ohio App. LEXIS 1868. In Godbolt, the court upheld the trial court's decision to admit a stipulation advising the jury that the defendant "has a previous felony crime of violence conviction" for the purpose of a having weapons under a disability charge. Id. at *11. The court noted that the stipulation mirrored the language of the statute and, therefore, was in harmony with the Old Chief decision. Id. at *12. Likewise in the present case, it was not necessary to admit any more evidence of Totarella's prior convictions than was necessary to satisfy R.C. 2923.12(D). Given the prejudicial tendency of such evidence, to do so was error.
 {¶ 37} Although it was error for the trial court to admit the stipulation as drafted, that error does not warrant the reversal of Totarella's convictions. We begin by noting that Totarella has failed to preserve this issue for review. Totarella requested a stipulation to exclude the name and nature of his prior convictions through a motion filed prior to trial. However, "the ruling in a motion in limine does not preserve the record on appeal." State v. Grubb (1986), 28 Ohio St.3d 199, 203, quoting Palmer, Ohio Rules of Evidence Manual (1984), at 446. "A proper objection must be raised at trial to preserve error." State v.Brown (1988), 38 Ohio St.3d 305, 312 (citation omitted). Here, Totarella failed to object to the evidence of his prior convictions at trial, thereby waiving his right to raise the error on appeal. State v. Kole (June 28, 2000), 9th Dist. No. 98CA007116, 2000 Ohio App. LEXIS 2834, at *8 n. 1; State v.Brock (June 26, 1998), 11th Dist. No. 96-T-5564, 1998 Ohio App. LEXIS 2908, at *17.
 {¶ 38} Where an appellant has failed to preserve an issue for review, a reviewing court has the power, under Crim.R. 52(B), to recognize "plain errors or defects involving substantial rights."State v. Campbell, 69 Ohio St.3d 38, 41, 1994-Ohio-801. We decline to find the stipulation constitutes plain error under the doctrine of invited error. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State exrel. Bitter v. Missig, 72 Ohio St.3d 249, 254, 1995-Ohio-147, citing State ex rel. Fowler v. Smith, 68 Ohio St.3d 357, 359,1994-Ohio-302; Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus. In this case, Totarella stipulated to the fact of his prior convictions, to their specific names and natures. It may be said that Totarella only entered into this stipulation to avoid having his parole officer testify before the jury. There is no evidence, however, that Totarella raised any objection to the form of the stipulation, although he had moved the court in limine to exclude the name and nature of his prior convictions. In effect, Totarella voluntarily entered into a stipulation he believed erroneous. We agree with the holding of the Twelfth District when facing this same issue in a similar context: "While a trial court is not required to accept a defendant's stipulation as to the existence of the [prior] convictions, neither can the defendant assign as error the acceptance of such a stipulation by the trial court after he has invited the claimed error." Abercrombie, 2002-Ohio-2414, at ¶ 27. Totarella's third assignment of error is without merit.
 {¶ 39} In his fourth and fifth assignments of error, Totarella challenges the trial court's rulings limiting his cross-examination of two of the state's witnesses. A defendant's right to cross-examine the state's witnesses is guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution. Douglas v. Alabama (1965), 380 U.S. 415, 418
("[o]ur cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination"). As is true in other evidentiary matters, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v. Green (1993), 66 Ohio St.3d 141, 147, quotingAlford v. United States (1931), 282 U.S. 687, 691; O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163 ("the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion"). Moreover, the trial court may impose reasonable restrictions on the scope of cross-examination based on concerns about harassment, prejudice, confusion of the issues, or relevance of the inquiry. State v. Brown, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, at ¶ 14, quoting Delaware v.Van Arsdall (1986), 475 U.S. 673, 679.
 {¶ 40} Totarella claims that the trial court erred by limiting his cross-examination of Platko as regards her mental illness. Platko was Totarella's neighbor who witnessed the incident between Totarella and Holton and reported it to the police. During cross-examination, Totarella's attorney elicited from Platko that she is under the care of a psychiatrist. Totarella's attorney also questioned Platko about the medicines she was currently taking and whether these medications affected her ability to perceive the events in question. On two occasions, Totarella's attorney asked Platko about the specific condition for which Plakto was taking medication. On each occasion, the trial court sustained the state's objection. Totarella argues that he was thereby deprived of the opportunity to inquire into Platko's ability to perceive events and relate them accurately. Cf. Evid.R. 616(B) ("A defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.").
 {¶ 41} We hold that the trial court did not abuse its discretion by limiting the cross-examination into Platko's mental illness. Prior to trial, the issue of Platko's condition was discussed by the court and both trial counsel. The trial judge acknowledged that mental illness could affect a person's ability to perceive reality and inquired of the prosecutor whether Platko was delusional in any way. The prosecutor replied that Platko was being treated for depression and anxiety. Satisfied that Platko's underlying psychological condition was not relevant to her ability to perceive and relate events, the trial judge decided to limit defense counsel's cross-examination of Platko to the medications she was currently taking. We agree that without a foundation for inquiring into Platko's mental health, the trial court properly limited the cross-examination of Platko in this regard.
 {¶ 42} Totarella also claims that the trial court erred by preventing him from questioning the victim, Holton, concerning her employment. Again, the court and the attorneys discussed this issue of Holton's employment at a Cleveland strip club prior to trial. The prosecutor, contrary to Totarella's attorney, argued that Holton's place of employment had no relevance to her ability to perceive and relate events but would make her seem a "less desirable" victim. The trial judge ruled that defense counsel could ask Holton whether there was anything about her employment that might bear on her ability to perceive matters, but that he could not ask specifically where she works. Totarella also maintains that Holton's place of employment was relevant to Holton's credibility and to show bias.
 {¶ 43} We disagree. Totarella advances no substantive argument why Holton's place of employment is relevant to her credibility, possible bias, or to any of the factual events underlying the charges against him. We are unable to conceive of any possible connection. Totarella is correct that "[a]ny abrogation of the defendant's right to a full and complete cross-examination of such witnesses is a denial of a fundamental right essential to a fair trial." State v. Hannah (1978),54 Ohio St.2d 84, 88 (citation omitted). A defendant's right of cross-examination, however, is still limited to matters relevant to the issues being litigated. Evid.R. 402 ("Evidence which is not relevant is not admissible."); State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."). Accordingly, we overrule Totarella's fourth and fifth assignments of error.
 {¶ 44} In his sixth assignment of error, Totarella asserts that the trial court erred by allowing Holton, during redirect examination, to read from a prior written statement she had given to police on the day of the incident with Totarella. Totarella argues that this prior statement constitutes inadmissible hearsay and exceeds the proper scope of redirect examination.
 {¶ 45} On direct examination, Holton testified that Totarella forced her against her will to leave the scene at Regent Road in Totarella's car. On cross-examination, defense counsel sought to undermine this testimony by contrasting it with a written statement Holton had made for Patrolman Regnier on the day of the incident. Defense counsel asked Holton the following leading questions, "you never told the police in your statement you were forced in his car, correct?" and "you also put in your statement that Mr. Totarella begged you to leave because the police were coming, correct?" Defense counsel also quoted directly from Holton's statement, "I left because I thought I saw kids around." On redirect examination, over defense counsel's objection, the prosecutor had Holton read that portion of her statement that pertained to her accompanying Totarella to his car.[3]
 {¶ 46} "Ordinarily, prior consistent statements of a witness are not admissible to rehabilitate him where his direct testimony has been impeached by the admission of prior statements inconsistent with such direct testimony." Shellock v. Klempay
(1958), 167 Ohio St. 279, paragraph one of the syllabus. Such statements normally constitute hearsay. Under the Rules of Evidence, however, prior consistent statements are not hearsay when they are "offered to rebut an express or implied charge against [the witness] of recent fabrication or improper influence or motive." Evid.R. 801(D)(1)(b). As Totarella correctly points out, Evid.R. 801(D)(1)(b) only applies "when those statements were made before the charged recent fabrication or improper influence or motive." Tome v. United States (1995),513 U.S. 150, 167; State v. Nichols (1993), 85 Ohio App.3d 65, 71. Totarella argues that Holton made her statement to the police after her motive to falsify arose and, therefore, is inadmissible under Evid.R. 801(D)(1)(b).
 {¶ 47} We reject Totarella's argument. At no point during the cross-examination of Holton was it ever suggested that her direct testimony was a recent fabrication due to some improper influence.[4] Totarella questioned Holton about her prior written statement in order to impeach her prior testimony regarding her motivation for accompanying Totarella from the crime scene without any explanation of apparent inconsistencies. In doing so, Totarella "opened the door" for the prosecutor to have Holton read directly from her statement. State v. Jones
(Mar. 15, 1995), 4th Dist. No. 94CA11, 1995 Ohio App. LEXIS 1022, at *7. "Where, on cross-examination, a witness is impeached by a showing of prior statements made by him in a written instrument apparently inconsistent with his statements on direct examination, reference to other statements in the same document used to impeach him is proper for the purpose of rehabilitation, where such other statements are consistent with the statements made on direct examination or are in explanation of such apparent inconsistency and do not serve to inject new issues into the case." Shellock, 167 Ohio St. 279, at paragraph two of the syllabus. Here, the prosecutor properly had Holton read from her statement for the purpose of correcting the impression of inconsistency created by defense counsel on cross-examination. Totarella's sixth assignment of error is without merit.
 {¶ 48} Totarella complains in his seventh assignment of error that he was denied a fair trial by the trial court's failure to take adequate corrective action after the jury observed him in the presence of sheriff's deputies. Following jury selection, the trial court ordered a brief recess. Prior to the jury exiting the courtroom, two sheriff's deputies approached Totarella at the defense table and accompanied him out of the courtroom. The jury may also have observed Totarella in the presence of the sheriff's deputies outside of the courtroom.
 {¶ 49} Absent unusual circumstances, "no one should be tried while shackled." State v. Kidder (1987), 32 Ohio St.3d 279,285, citing Illinois v. Allen (1970), 397 U.S. 337, 344. The decision whether to have a defendant shackled during his trial is within the trial court's discretion. State v. Woodards (1966),6 Ohio St.2d 14, 23.
 {¶ 50} In the present case, Totarella was in custody at the time of his trial. This fact, however, would not have been apparent to the jury had not Totarella been escorted from the courtroom by sheriff's deputies during a recess. Prior to the resumption of the trial, the matter was taken up by the trial judge and counsel. The possibilities of declaring a mistrial and of conducting a voir dire of the jury to determine exactly what the jury had witnessed were discussed. Ultimately, the trial judge decided to address the issue directly through a corrective instruction as follows: "[I]t has come to my attention that some of you may have seen Mr. Totarella in the company of deputies. That's right. Mr. Totarella is in jail. Mr. Totarella is in jail because he has either chose to or did not meet bond. So he is being held there because of the bond, not meeting bail. Not in there because of any imprisonment or any danger that he poses or anything of that nature."
 {¶ 51} The Ohio Supreme Court has noted that, in such cases, "danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside of the courtroom." Kidder, 32 Ohio St.3d at 286 (citations omitted). Here, the jury's view of Totarella accompanied by the deputies was brief and inadvertent. Although it occurred within the courtroom, the trial proper had not yet begun and the deputies did not remain in Totarella's presence during the trial. We hold that the trial court adequately countered any possible prejudice suffered by Totarella by its corrective instruction. Moreover, defense counsel appears to have acquiesced at the time with the trial court's resolution of this matter. State v. Bay,85 Ohio St.3d 487, 493, 1999-Ohio-283, quoting Hal Artz Lincoln-Mercury,Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus ("[a] party will not be permitted to take advantage of an error which he himself invited or induced"). Totarella's seventh assignment of error is overruled.
 {¶ 52} In Totarella's eighth assignment of error, he argues that the trial court denied him the effective assistance of counsel by unreasonably limiting the scope of defense counsel's closing argument. The right of a defense counsel to present a closing summation of the facts and law to the jury is a constitutional right under the Sixth Amendment's guarantee of "Assistance of Counsel." Herring v. New York (1975),422 U.S. 853, 858. The trial court, however, has discretion to limit the duration as well as the scope of closing arguments. Id. at 862 ("[t]he presiding judge * * * may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial").
 {¶ 53} Totarella cites to three instances in which he claims the trial court unreasonably abrogated defense counsel's arguments during closing argument. In the first instance, defense counsel was attempting to bring to the jury's attention that Holton's car was never inventoried by the police but that, if it had, it was possible that the police would have found illegal drugs. The trial court properly upheld the prosecution's objection to this line of argument as speculative as well as irrelevant to the issue of Totarella's guilt or innocence. The next two instances involved the charge of carrying concealed weapons. Defense counsel first attempted to argue that the switchblade knife found on Totarella had not been adapted for use as a weapon and could be purchased at any sporting goods store. Defense counsel then stated that the prosecution had to show that the knife was being used as a weapon at the time. In both cases the trial court properly upheld the state's objections. We find defense counsel's assertion that the knife found on Totarella could be purchased at any sporting goods store to be unsupported by any evidence in the record. Moreover, the accuracy of defense counsel's claim is dubious in light of Ohio's ban on the sale of switchblade knives. See R.C. 2923.20(A)(3) ("No person shall * * * [m]anufacture, possess for sale, sell, or furnish to any person other than a law enforcement agency * * * any * * * switchblade * * * or similar weapon"). Defense counsel's claim that the prosecution bore the burden of showing that the knife was being used as a weapon is a misstatement of the law. As will be shown below, a switchblade knife is an inherently dangerous weapon for the purposes of R.C. 2923.12. Totarella's eighth assignment of error is overruled.
 {¶ 54} Totarella's ninth and tenth assignments of error concern the trial court's refusal to instruct the jury on the lesser included offense of assault to the charges of felonious assault and on the lesser included offense of unlawful restraint to the charge of kidnapping. "An offense may be a lesser included offense of another if * * * the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed." State v.Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus. "Where the evidence in a criminal case would support a finding by the jury of guilt of a [lesser included offense], the refusal of the trial court to charge upon that lesser included offense is error prejudicial to the rights of defendant." State v.Loudermill (1965), 2 Ohio St.2d 79, at syllabus; Deem,40 Ohio St.3d 205, at paragraph one of the syllabus, citing R.C. 2945.74
and Crim.R. 31(C). However, a trial court is only required to instruct on a lesser included offense "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, at paragraph two of the syllabus. "Thus, the trial court's task is twofold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." Kidder, 32 Ohio St.3d at 280.
 {¶ 55} It is well-established that assault is a lesser included offense of felonious assault. State v. Nipper, 12th Dist. No. CA2002-06-135, 2003-Ohio-4449, at ¶ 24; State v.Cochran, 2nd Dist. No. 19448, 2003-Ohio-3980, at ¶ 10; State v.Booth, 4th Dist. No. 02CA30, 2003-Ohio-2064, at ¶ 13. As this court has observed, "[s]imple assault, as described in R.C.2901.13(A), is a lesser included offense of felonious assault as set forth in R.C. 2903.11(A)(2) because the elements of the two crimes are the same except that felonious assault has the additional element that an accused used `a deadly weapon or dangerous ordnance.'" State v. Gunther (1998),125 Ohio App.3d 226, 239-240. Totarella, however, was not entitled to an instruction on simple assault. The underlying fact of the felonious assault charge against Totarella is that Totarella drove his automobile into Holton's automobile. No jury could have convicted Totarella of simple assault because, without the fact that Totarella had used his automobile as a deadly weapon, there would be no assault. Therefore, the facts presented at trial in this case did not reasonably support an acquittal on the charge of felonious assault.
 {¶ 56} It is also well-established that unlawful restraint is a lesser included offense of kidnapping. State v. Garrett, 12th Dist. No. CA2002-05-111, 2003-Ohio-5000, at ¶ 34; State v.Cruz, 9th Dist. No. 03CA0031-M, 2003-Ohio-4782, at ¶ 24; State v.Brancho, 7th Dist. No. 97-CA-63, 2002-Ohio-5237, at ¶ 20. Totarella was indicted for kidnapping under R.C. 2905.01(A)(2), which provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony[, in this case, felonious assault,] or flight thereafter." In order to commit the crime of unlawful restraint it is only necessary to "restrain another of his liberty" without privilege to do so. R.C. 2905.03. The key elements of the greater offense of kidnapping, then, are that the victim's liberty is restrained by force, threat, or deception and that the victim's liberty was restrained for the purpose of facilitating flight after the commission of a felony. In the present case, we find that no reasonable jury could fail to find that these additional elements of the crime of kidnapping were established. Holton testified that when she went with Totarella she felt that she did not have a choice. Totarella told her that he wanted to leave because the police were coming. Totarella had just struck her, slammed her head against his car, threatened to kill the neighbor, and rammed his automobile into hers. Moreover, Totarella did not put on a defense but, rather, argued that the testimony demonstrated that Holton had voluntarily left with Totarella. If the jury had accepted Totarella's interpretation of the testimony, it could not have convicted him of the lesser offense of unlawful restraint anyway. Cf. State v. Keenan,81 Ohio St.3d 133, 139, 1998-Ohio-459 ("where a defendant presents a complete defense to the substantive elements of the crime, * * * an instruction on a lesser included offense is improper"). For the foregoing reasons, the trial court did not err by refusing to instruct on the less included offense of unlawful restraint. Totarella's ninth and tenth assignments of error are without merit.
 {¶ 57} In Totarella's eleventh, twelfth, and thirteenth assignments of error, he argues that the evidence adduced at trial was insufficient to support his convictions for carrying concealed weapons, intimidation, and felonious assault. Crim.R. 29(A) (a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction").
 {¶ 58} The Ohio Supreme Court has defined "sufficiency" as "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 319.
 {¶ 59} As regards the conviction for carrying concealed weapons, Totarella argues that the state failed to introduce evidence that the knife Patrolman Johnson found in Totarella's pocket constitutes a "deadly weapon." R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried or used as a weapon." Totarella maintains that there was no evidence that the knife in question was designed or adopted for use as a weapon. Patrolman Johnson described the knife as spring-loaded, having a serrated blade three and one-eighth inches long. This type of knife is popularly known as a switchblade and its distinguishing characteristic is that it can be opened with one hand.
 {¶ 60} There is no presumption that a knife is a deadly weapon. State v. Cathel (1998), 127 Ohio App.3d 408, 411-412, quoting Columbus v. Dawson (1986), 28 Ohio App.3d 45, 46. Ordinarily, the state must show "either that the knife was designed or specifically adapted for use as a weapon or, in the alternative, that the defendant possessed, carried, or used the knife as a weapon." Dawson, 28 Ohio App.3d at 46. A switchblade knife, by virtue of its spring-loaded action, is by definition adapted for use as a weapon and, per se, constitutes a "deadly weapon." State v. Johnson, 8th Dist. No. 81299, 2003-Ohio-4177, at ¶ 23 (where the knife was "a pocket knife which required both hands to open" and "not a switch blade," the state had to present evidence that it was designed or adapted for use as a weapon);State v. Mullins (Dec. 2, 1981), 1st Dist. No. C-810093, 1981 Ohio App. LEXIS 12578, at *4-*5 (the fact that "a switchblade knife can be used as a toothpick" does not remove it from the statutory category of "designed or specifically adapted for use as a weapon"); State v. Orlett (1975), 44 Ohio Misc. 7, 9 (a "switchblade knife [is] per se deadly"); cf. former R.C. 2923.021
(prohibiting possession of "any knife fitted with a mechanical device for automatic release of the blade, opening the knife and locking the knife in the open position, commonly known as a switch or automatic spring knife").
 {¶ 61} Totarella's indictment for intimidation required the state to prove that he "knowingly and by force, by unlawful threat of harm to any person or property * * * attempt[ed] to influence, intimidate, or hinder * * * a witness," Platko, "in the discharge of the person's duty." R.C. 2921.03(A). Totarella argues that he could not be convicted of this crime because the court, in its instructions to the jury, defined a "witness" as "any person who has or claims to have knowledge concerning a fact or facts in a proceeding." At the time of Totarella's exchange with Platko, no criminal proceedings had yet been instituted against him. Therefore, Totarella concludes, Platko cannot be a "witness."
 {¶ 62} We summarily dismiss this argument. We are aware of no precise definition of a "proceeding" for the purpose of R.C.2921.03 and will not construe that term so narrowly as to exclude the possibility of intimidating a witness while she is reporting a crime in progress. State v. Crider (1984),21 Ohio App.3d 268, 269 ("[i]t would be ludicrous to hold that the victim, who was intimidated, is not a `witness' under R.C. 2921.03(A) because * * * the prosecution had not yet issued a complaint against [the accused]"). We also note that, for the purposes of the intimidation statute, a witness has been defined to include one who is "cognizant of something by direct experience." State v.Maynard (Mar. 16, 2000), 8th Dist. No. 75722, 2000 Ohio App. LEXIS 1031, at *17, quoting Crider, 21 Ohio App.3d at 269. As a witness to Totarella's felonious assault on Holton, Platko had a statutory duty to report what she saw to the police. R.C.2921.22. Totarella, by unlawful threat of harm, attempted to hinder her in the discharge of that duty.
 {¶ 63} We also summarily dismiss Totarella's argument that his conviction for intimidation violated his right to free speech. Totarella waived this argument by not raising it in the trial court. State v. Awan (1986), 22 Ohio St.3d 120, at syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from the state's order procedure, and therefore need not be heard for the first time on appeal.").
 {¶ 64} In regards to his conviction for felonious assault, Totarella argues that there was no evidence of the intent on Totarella's part to use his car as a deadly weapon and that, at best, the facts support a charge of vandalism. We disagree. In Ohio, it is established that an automobile may constitute a "deadly weapon" for the purposes of R.C. 2923.11 when it is used in a manner likely to produce death or serious bodily harm.State v. Wallace (Mar. 30, 2000), 10 Dist. No. 99AP-802, 2000 Ohio App. LEXIS 1304, at *12, citing State v. Brown (Mar. 21, 1995), 10th Dist. No. 94AP-1391, 1995 Ohio App. LEXIS 1063;State v. Stewart (Oct. 12, 2000), 8th Dist. No. 77180, 2000 Ohio App. LEXIS 4772, at *6, citing State v. Grimsley (1982),3 Ohio App.3d 265. "In determining whether an automobile is a deadly weapon, a court should not only consider the intent and mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or seriously bodily injury." Statev. Gimenez (Sept. 4, 1997), 8th Dist. No. 71190, 1997 Ohio App. LEXIS 4013, at *20, citing State v. Upham (May 12, 1997), 12th App. No. CA96-08-157, 1997 Ohio App. LEXIS 1992.
 {¶ 65} In the present case, we find that a rational jury could have found beyond a reasonable doubt that Totarella attempted to cause Holton physical harm by means of his automobile, a thing capable of inflicting death and used, in this instance, as a weapon. Prior to the assault, Totarella and Holton had been arguing Holton being able to leave Totarella and return to her home. Totarella had frustrated her efforts to leave by taking her ignition key and beating her. When Holton was finally in a position to drive away in her automobile, Totarella rammed his automobile into her driver's side door with enough force to shatter the door's window. The jury was able to view the damage done to Holton's car and heard the testimony of two witnesses' describe the incident. There is no credible evidence that Totarella did not intend to run his automobile into Holton's in the manner described. Accordingly, there is sufficient evidence to sustain Totarella's conviction of felonious assault. Totarella's eleventh, twelfth, and thirteenth assignments of error lack merit.
 {¶ 66} Under Totarella's fourteenth and final assignment of error, he asserts that, pursuant to Ohio's allied offenses statute, R.C. 2941.25, the trial court erred by not merging his sentences for kidnapping and felonious assault. Under R.C.2941.25, if a defendant's conduct "`can be construed to constitute two or more allied offenses of similar import,' the defendant may be convicted (i.e., found guilty and punished) of only one [of the allied offenses]." State v. Rance,85 Ohio St.3d 632, 636, 1999-Ohio-291 (emphasis sic), citing R.C.2941.25(A). If, however, a "defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each," the defendant may be convicted and sentenced separately for each offense. R.C. 2941.25(B). The test for deciding if particular crimes are of similar or dissimilar import is whether "the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance, 85 Ohio St.3d at 638, quoting State v.Jones, 78 Ohio St.3d 12, 13, 1997-Ohio-38.
 {¶ 67} In State v. Blankenship (1988), 38 Ohio St.3d 116, the Ohio Supreme Court analyzed the statutory elements of kidnapping under R.C. 2905.01(A) and felonious assault under R.C.2903.11. Id. at 117-118. "Comparing the elements of the two crimes," the court concluded that the two offenses were not of similar import. Id. at 118. The court noted "that the commission of kidnapping [did not] necessarily result in the commission of felonious assault. A kidnapping may occur without a felonious assault. Likewise, a felonious assault may occur absent the existence of a kidnapping. A person may seriously injure another without restraining the victim of his or her liberty." Id. Applying Blankenship, we overrule Totarella's fourteenth assignment of error.
 {¶ 68} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
O'Neill and Rice, JJ., concur.
[1] Totarella was sentenced to five years for the kidnapping and felonious assault convictions to run concurrently; and to six months for the carrying concealed weapons conviction and one year for the intimidation conviction to be served consecutively.
[2] At this pre-trial conference, Totarella's attorney did not argue for the specific relief sought in the motion, i.e., that this element be stipulated to without identifying the nature or the details of the convictions. The transcript demonstrates that while the trial judge, prosecutor, and defense attorney discussed at length the question of whether or not the state would be allowed to introduce evidence on this issue, the question of what form this evidence should take was not raised.
[3] Holton read from her statement as follows: "[Totarella] [c]ame up, begged me to leave with him, cops were coming. I said, `So you hurt me. I am scared. You pulled my hair, grabbed my arms and my head, my car blocking the driveway." He said, "I promise I won't hurt you." I said, "You already have." I left because I saw kids around. I was extremely upset and at that point in time enough damage had been done. I was shaking, crying, my mind all over the place. I don't have one idea what I did wrong because I didn't do wrong because I did what he wanted. I was very grateful to — she [Platko] called."
[4] Totarella suggests, elsewhere, that Holton went voluntarily with him because she had been driving with a suspended license and feared that the police would realize this if they found her at Regent Road. Holton had been warned earlier that day by Willoughby police not to drive.