[Cite as *State v. Hudson*, 2012-Ohio-5614.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 11 MA 130 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| CLYDE HUDSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                               Court, Case No. 10 CR 213.


JUDGMENT:                      Affirmed.


APPEARANCES:
For Plaintiff-Appellee:         Attorney Paul J. Gains
                                Prosecuting Attorney
                                Attorney Ralph M. Rivera
                                Assistant Prosecuting Attorney
                                21 W. Boardman St., 6th Floor
                                Youngstown, OH  44503


For Defendant-Appellant:        Attorney David Engler
                                100 DeBartolo Place, Suite 315
                                Youngstown, OH  44512


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich


                                Dated:  November 23, 2012

DeGenaro, J.

{¶1} Defendant-Appellant, Clyde Hudson, appeals the decision of the Mahoning County Court of Common Pleas, convicting him of one count of felonious assault of a peace officer and one count of improperly handing a firearm in a motor vehicle, and sentencing him accordingly. On appeal, he argues that his felonious assault conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶2} Upon review, Hudson's assignment of error is meritless. The evidence in this case was sufficient to support a conviction for felonious assault. Further, Hudson's conviction was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶3} On March 18, 2010, the Mahoning County Grand Jury indicted Hudson for one count of felonious assault (R.C. 2903.11(A)(2)(D)), a first-degree felony; one count of having weapons while under disability (R.C. 2923.13(A)(3)(B)), a third-degree felony; and one count of improperly handling a firearm in a motor vehicle (R.C. 2923.16(B)(I)(2)), a fourth-degree felony. Hudson was subsequently arraigned and pled not guilty, and he later waived his right to a trial by jury.

{¶4} On June 16, 2011, the matter came for a bench trial before the court. Officer Edward Kenney of the Youngstown Police Department testified first for the State. He testified that on February 14, 2010, at approximately 2:30 a.m., a call came over dispatch regarding gunfire at Ducka's Bar on Hylda Avenue in Youngstown. As Officer Kenney approached Hylda Avenue, he could hear gunfire but did not see anyone firing a gun. He was the first officer on the scene and stated that other officers arrived shortly after. On Hylda, he observed that traffic was bumper to bumper all the way up the street, and people were running and walking everywhere. He described the scene as chaotic and estimated there were probably a "couple hundred" people in the street. He parked his vehicle and began looking for victims or suspects.

{¶5} Officer Kenney explained that another police officer, Officer Anderson, received information from dispatch that a blue Chevrolet Caprice located near the post

office, on the opposite side of the street from Ducka's Bar, was involved in the shooting. When Officer Kenney approached the Caprice, Officer Anderson was standing in front of the vehicle near the driver's side area, and Officer Martini was standing on the side of the vehicle by the front passenger side. Officer Kenney moved behind the vehicle with Officer Fulmer. The officers were wearing their uniforms. Officer Kenney testified that the vehicle had its headlights on, there was street lighting on Hylda Avenue, and he was able to clearly see Officers Anderson and Martini.

{¶6} At this point, Officer Kenney pointed his gun at the vehicle. Officers Anderson and Martini told the occupants of the vehicle to turn off the car and show their hands. Officer Kenney testified that the vehicle began backing up, and then it went into drive and it was "gunned" towards Officer Anderson. It appeared that the vehicle was going to hit Officer Anderson, but he jumped out of the way. The vehicle then turned right and went into the post office parking lot. The vehicle got stuck on a snow bank, and then the two occupants exited the vehicle and ran. Officer Kenney followed the passenger who ran behind the post office; the driver ran westbound on Hylda Avenue.

{¶7} On cross-examination, Officer Kenney stated that Officer Anderson was standing in the middle of the street about five feet away from the vehicle when it began moving towards him. Officer Kenney estimated that as the vehicle went into the middle of the street, it was traveling 10 or 15 miles per hour, although he agreed that it could have been less.

{¶8} Next, Officer George Anderson testified that when he arrived on Hylda Avenue, he received information from the dispatch that two men involved in the shooting had run to a blue Caprice. He and Officer Martini parked their police vehicles in the street, blocking all westbound traffic. After he exited his vehicle, he and Officer Martini began moving towards the crowd of people, looking for the Caprice and other vehicles identified by dispatch as involved in the shooting.

{¶9} Officer Anderson located the Caprice parked up on the curb near the post office, facing towards where his police car was parked. People in the crowd identified the Caprice as being involved in the shooting. The Caprice was located a couple car lengths

away from his parked police vehicle. A Pontiac was parked between his police vehicle and the Caprice, and the Pontiac was directly in front of the Caprice.

{¶10} Officer Anderson and Officer Martini had their guns pointed at the Caprice as they approached it. They observed the vehicle beginning to back up and they gave verbal commands for it to stop. He explained that the Caprice then backed up and drove forward around the Pontiac in front of it, directly towards him. As the Caprice moved towards him, the driver was accelerating and the vehicle was picking up speed. He jumped out of the way, and if he had not moved, it appeared that the vehicle would have hit him. He did not fall and he was able to maintain control of his gun. He testified that as the vehicle moved towards him, he thought about firing his gun. He believed he was in danger and would have been justified in shooting, but he did not shoot because he had enough room to move out of the way.

{¶11} After the occupants exited the vehicle and began running, Officer Anderson pursued the driver who was eventually apprehended by two other police officers. The driver, identified as Clyde Hudson, and the passenger, William Sullivan, were placed under arrest. The Caprice belonged to Sullivan and Hudson did not have a valid driver's license. Officer Anderson and another officer conducted an inventory search of the vehicle before it was towed. They found a loaded handgun under the driver's seat and another handgun under the passenger seat.

{¶12} On cross, Officer Anderson testified that as the Caprice was backing up, he was located five to ten feet away from it. He testified that as the vehicle drove towards him, it was traveling two to three miles per hour. He agreed that when he jumped out of the way of the vehicle, he had ample opportunity to move out of the way. He also confirmed that the Caprice did not try to ram the police vehicles parked in the street.

{¶13} Next, Officer Robert Martini testified that after the Caprice went in reverse, it "gunned forward towards Officer Anderson" and it appeared that the vehicle was going to hit him. When Officer Anderson moved out of the way, the vehicle was approximately two to three feet away from him. Officer Martini also testified that when he and Officer Anderson left their vehicles, they both left their overhead lights and headlights on. On

cross, Officer Martini explained that when the Caprice drove towards Officer Anderson, it "lurche[d] forward" although he could not say how many miles per hour it was moving.

{¶14} The State then rested subject to the admission of its exhibits. The defense made a motion for acquittal pursuant to Crim.R. 29, which the court overruled. The defense then rested and renewed its motion for acquittal. The trial court again overruled this motion. The trial court granted the parties seven days to file post-trial briefs in lieu of closing arguments.

{¶15} On June 23, 2011, the State filed a closing argument. On June 28, 2011, Hudson filed a post-trial memorandum.

{¶16} The matter came for hearing on the verdict on June 29, 2011. In response to the defense's argument that Hudson was merely trying to get away and there was no evidence that his vehicle used in this manner was capable of causing harm, the court found that:

> I don't think this is a case such that, Mr. Hudson, you were simply trying to elude the police. I do think you were trying to get away, but I think you were trying to get away in a manner that attempted to cause physical harm to Officer Anderson. I think whether you were traveling at two, three, or five or ten miles per hour, and that's the range we have based on the testimony, had Officer Anderson not jumped out of the road out of the way you could have caused serious physical harm to him."

{¶17} Following the hearing, the trial court issued a judgment entry on July 6, 2011, finding Hudson guilty of count one, felonious assault (R.C. 2903.11(A)(2)(D)), and count three, improperly handing a firearm in a motor vehicle (R.C. 2923.16(B)(I)(2)). The trial court found Hudson was not guilty of count two, having weapons while under disability (R.C. 2923.13(A)(3)(B)).

{¶18} Following a sentencing hearing, the trial court issued a judgment entry on August 5, 2011, sentencing Hudson to five years of imprisonment on count one and 1.5

years of imprisonment on count three, these sentences to be served concurrently.

## Sufficiency and Manifest Weight of the Evidence

{¶19} In Hudson's sole assignment of error, he argues:

{¶20} "The trial court erred and abused its discretion in ciolation [sic] of the Due Process Clause of the Fourteenth Amendment."

{¶21} Hudson challenges both the weight and the sufficiency of the evidence for his conviction for felonious assault of a peace officer. Each argument will be discussed in turn.

{¶22} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the fact-finder or whether the evidence is legally sufficient as a matter of law to support a conviction. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the prosecution presented sufficient evidence is a question of law, and a conviction based on legally insufficient evidence denies the defendant his right to due process. *Id.* at 386-387. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

{¶23} Hudson was convicted of one count of felonious assault pursuant to R.C. 2903.11(A)(2): "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Because the victim was a peace officer, Hudson's offense was a first-degree felony. R.C. 2903.11(D)(1)(a).

{¶24} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "'Deadly weapon' means any instrument, device, or thing capable of

inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

**{¶25}** When an automobile is used in a manner likely to produce death or grave bodily harm, it can be classified as a deadly weapon under R.C. 2923.11. *State v. Tortarella*, 11th Dist. No. 2002-L-147, 2004-Ohio-1175, ¶ 64; *State v. Allsup*, 3d Dist. Nos. 6-10-06, 6-10-07, 2011-Ohio-405, ¶ 23. "When determining whether an automobile is a deadly weapon, a court should consider the intent of the user, the nature of the weapon, the manner of its use, the actions of the user and the capability of the instrument to inflict death or serious bodily injury." *State v. Evans*, 10th Dist. No. 01AP-112, 2002-Ohio-3322, ¶ 22, citing *State v. Gimenez*, 8th Dist. No. 71190, 1997 WL 547950 (Sept. 4, 1997).

**{¶26}** At trial, the testimony established that four police officers dressed in uniform surrounded Hudson's vehicle. Officer Anderson stood in the street five to ten feet in front of Hudson's vehicle with his gun pointed at the vehicle. While it was late at night, the two police vehicles parked nearby had their headlights and overhead lights on. Hudson's vehicle had its headlights on and there was also street lighting. Officer Kenney, who was standing behind the vehicle, was able to see Officer Anderson and hear Officers Anderson and Martini give verbal commands for the occupants to turn off the vehicle. Instead of following those commands, the vehicle backed up, then drove directly towards Officer Anderson. Officer Anderson jumped out of the path of the vehicle, and it turned right into the post office parking lot. The officers estimated that the vehicle moved forward at speeds between 2 and 15 miles per hour. Officers Kenney and Martini both testified that the vehicle was "gunned" forward towards Officer Anderson.

**{¶27}** Hudson argues that the evidence was insufficient to find that he used his vehicle as a deadly weapon. He notes that Officer Anderson testified that the vehicle was moving two to three miles per hour and he had ample time to move out of the way. However, it is clear that an automobile is capable of inflicting death and that the trier of fact could have found beyond a reasonable doubt that Hudson used his vehicle as a weapon. Hudson drove his vehicle directly towards Officer Anderson, who believed that

the vehicle would have hit him if he did not move. A Chevrolet Caprice is a heavy instrument that is capable of inflicting serious bodily injury, even at low speeds. Moreover, construing the evidence in favor of the prosecution, the trier of fact could have found that the vehicle was moving faster, up to 15 miles per hour. The other officers' testimony that Hudson "gunned" the vehicle towards Officer Anderson also supports the conclusion that Hudson used the vehicle as a weapon.

{¶28} Hudson further argues that the evidence was insufficient to demonstrate that he knowingly attempted to cause Officer Anderson physical harm. He claims that he was attempting to flee the scene of the shooting. However, even assuming that Hudson's purpose was to flee the scene, the mens rea for felonious assault is knowingly, as discussed above. A reasonable trier of fact could find that Hudson was aware that by gunning his vehicle forward in the direction of a person standing close by, he would probably hit that person with his vehicle, resulting in some injury. Officer Anderson did agree that he had ample time to move out of the way of Hudson's vehicle, but he also testified that the vehicle accelerated in his direction and he believed that he was in danger. Construing this evidence in the prosecution's favor, there was sufficient evidence for the trier of fact to find that Hudson knowingly attempted to cause physical harm.

{¶29} Accordingly, there was sufficient evidence presented for the trier of fact to find the essential elements of felonious assault beyond a reasonable doubt.

{¶30} In contrast to the sufficiency standard discussed above, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Thompkins, supra*, at 387. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the trier of fact is in a better position to determine credibility issues, since it personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶31} To determine whether a verdict is against the weight of the evidence, an appellate court must review the entire record*,* weigh the evidence and all reasonable

inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* at 387.

**{¶32}** Hudson contends that the trial court lost its way in finding that he knowingly attempted to cause physical harm to Officer Anderson. He argues that the weight of the evidence supports the conclusion that he was attempting to flee the scene, not injure the officer. He compares his case to *State v. Gooden*, 9th Dist. No. 24896, 2010-Ohio-1961, wherein the Ninth District found that the felonious assault conviction was not against the manifest weight of the evidence. *Id.* at ¶ 31. In that case, the defendant rammed an empty police car with his vehicle before driving at the police officer and veering away at the last second. The police officer discharged his gun at the vehicle and testified that he believed he was going to be killed by the vehicle. *Id.* at ¶ 5-10. Hudson argues that these facts are not present in the case sub judice to support a felonious assault conviction.

**{¶33}** But while the facts of *Gooden* are different than the instant case, there was competent credible evidence in the record to support the trial court's finding of guilt. Officer Anderson testified that if he did not move out the way of the vehicle, he believed that he would be struck and he considered discharging his gun because he believed he was in danger. Further, all three officers testified that Officer Anderson was directly in the path of the vehicle and the vehicle "gunned" forward, according to Officers Kenney and Martini, or accelerated forward, according to Officer Anderson.

**{¶34}** Hudson also argues that only Officer Anderson's testimony should be considered. But the weight to be given to testimony is primarily for the trier of fact to determine. *DeHass* at paragraph one of the syllabus. A review of the record does reveal some inconsistencies regarding the speed the vehicle was traveling. Officer Anderson's estimate that the vehicle was traveling two to three miles per hour is also somewhat inconsistent with the other officers' descriptions of Hudson "gunning" the vehicle. However, despite these discrepancies, the officers' testimony was otherwise consistent. Importantly, both Officer Anderson and Kenney testified that the vehicle was heading

directly towards Officer Anderson and that the vehicle would have hit him if he did not move out of the way. We conclude that the trial court could have reasonably found that these officers' testimony was credible. Moreover, the trial court could have reasonably given more weight to the testimony of Officers Kenney and Martini because they were not in the path of danger like Officer Anderson. While we cannot say that we would have decided this issue as the trial court did, this is not the exceptional case where the trial court has lost its way and created a manifest miscarriage of justice. Thus, Hudson's conviction for felonious assault was not against the manifest weight of the evidence.

**{¶35}** Accordingly, Hudson's assignment of error is meritless.

## Conclusion

**{¶36}** In sum, Hudson's sole assignment of error is meritless. The evidence in this case was sufficient to support a conviction for felonious assault of a peace officer. Further, Hudson's conviction was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.