OPINION
{¶ 1} Ronald L. Parker III was convicted after a bench trial in the Montgomery County Court of Common Pleas of one count of felonious assault and one count of kidnapping. The court sentenced him to seven years of imprisonment on each count, to be served consecutively. Parker appeals from his conviction and sentence, raising four assignments of error. *Page 2 
 {¶ 2} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT DENYING DEFENDANT DUE PROCESS BY GIVING CREDIBILITY AND WEIGHT AS SUFFICIENT EVIDENCE [TO] THE TESTIMONY OF WITNESSES WHO WERE ADMITTEDLY ON CRACK COCAINE AT THE TIME OF THE ALLEGED INCIDENT."
 {¶ 3} In his first assignment of error, Parker claims that his conviction was based on insufficient and incompetent evidence, because several of the state's witnesses were under the influence of drugs at the time of the alleged offenses.
 {¶ 4} "`[Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372,683 N.E.2d 1096, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 5} The state's evidence revealed the following facts.
 {¶ 6} Ronald Parker, also known as Slope, lived at 266 East Nottingham, Apartment 3C. Parker's apartment was equipped with a surveillance camera that viewed the entrances to apartments 3B and 3C, the front walkways, and the area up to the parking *Page 3 
lot. A monitor for the surveillance camera was located in the living room of apartment 3C. Parker sold illegal drugs.
 {¶ 7} Amber Wilt, a crack addict, was Parker's former girlfriend. Several witnesses, including Wilt, testified that there was a "bounty" on her head because she had stolen from Parker. Wilt testified that Parker had previously warned her that he knew she had taken money. Parker had stated: "I'm not going to do nothing to you right now because I got too many assaults on my record, but I will."
 {¶ 8} On December 20, 2005, Wilt was visiting a friend at the apartment of Wilt's acquaintance, Martine, who lived next door to Parker in apartment 3B. She arrived wearing a red sweater, a pair of jeans, and white K-Swiss shoes. Wilt had long blond hair, which she wore down. Molly Cruz, a crack addict who was living in Martine's apartment, testified that she returned home and found Wilt smoking crack cocaine in the kitchen. According to Cruz, Martine asked her to go to apartment 3C to ask someone there if he would give Martine a ride in his car to do something. Cruz went to Parker's apartment. When the door to Parker's apartment opened, Parker came out and went to Martine's apartment. Cruz stated that someone pulled her inside Parker's apartment and kept her there. Cruz denied informing Parker that Wilt was in Martine's apartment. However, Brandy Matheny, who was in Parker's apartment to buy crack, testified that Cruz reported to Parker that Wilt was next door.
 {¶ 9} Viewing the surveillance monitor, Cruz saw Parker and another male drag Wilt from Martine's apartment; Parker was dragging Wilt by her hands while the other man had Wilt's feet. Parker kicked Wilt repeatedly while other individuals — Rebecca Stidham (Parker's girlfriend), Ashley Shipper, and other crack smokers — watched. Parker and the *Page 4 
other man then carried Wilt by her arms and feet into apartment 3C. Cruz described Wilt, stating: "I think she was having a seizure. She was gurgling. The only thing I could hear out of her was a gurgle in her throat and she was jerking." Cruz stated that the men dropped Wilt on the living room floor and Parker kicked Wilt in the head. Matheny also testified that she saw Parker drag Wilt into the apartment; however, Matheny stated that Parker did so by himself.
 {¶ 10} After a few minutes, Parker dragged Wilt into the back bedroom of the apartment. Cruz stated that Stidham, Shipper and David Speed went into the bedroom with them; Matheny testified that only Parker went into the bedroom with Wilt. Soon thereafter, Matheny bought crack and left. Cruz heard a lot of bumping and thumping and heard Parker say, "You want to mess with Slope, this is what you're going to get. You won't forget Slope now. Everybody's going to know Slope's not a joke." Cruz heard nothing from Wilt.
 {¶ 11} After approximately thirty minutes, Parker returned to the living room, retrieved hair clippers, and went back into the back bedroom. Cruz next heard running water and clippers buzzing; this lasted for approximately thirty minutes to an hour.
 {¶ 12} According to Cruz, Parker, Stidham and Shipper returned to the living room with Wilt and attempted to get her to smoke crack. Wilt's face was swollen, she was wearing a bra and a pair of pants, she was wet and her hair was gone. Parker told Cruz to clean the bathroom; the bathtub was full of water, hair, blood, and some skin.
 {¶ 13} When Wilt could not smoke crack, Wilt was taken back to the bedroom. Parker invited Speed to "get himself a free blow job." Speed later reported to Parker that Wilt had tried but "she couldn't really do anything." Parker and Speed then dragged Wilt *Page 5 
to the utility closet. Cruz testified that, at this time, Wilt's face was "about four times the size it normally was. It was just huge and * * * there was blood all over. Her eyes were swollen. Her mouth was bleeding." Parker shut the door behind him and Wilt. Parker then came out of the closet and left Wilt inside. Parker returned to the utility closet on several occasions, and Cruz saw him hit Wilt a couple of times. Cruz once heard Wilt say to Parker, "No, Slope, I love you" while she was in the utility closet but heard nothing else from Wilt.
 {¶ 14} Matheny testified that she returned to apartment 3C and found Parker sitting on the couch. No one was allowed in the kitchen area, which included the utility closet. Matheny heard Wilt crying. When Matheny went into the bathroom, she saw big chunks of blond hair.
 {¶ 15} At approximately 12:45 a.m., Deputy John Campbell of the Montgomery County Sheriffs Department was dispatched to 266 East Nottingham in an attempt to locate a female that was possibly being held against her will. Deputy Roffus and Sergeant Bruce Beamus also went to the scene. Campbell met Wilt's mother's ex-boyfriend, who was looking for Wilt. The ex-boyfriend went to apartment 3C in an attempt to find Wilt inside; Parker let him look at certain places in the apartment and told him that Wilt was not there. Matheny corroborated this testimony. The officers also tried to gain entry, but Parker denied them access. During the night, the occupants of apartment 3C left the apartment.
 {¶ 16} At approximately 5:38 a.m., Detective John Clymer and other deputies gained access to the apartment. They found Wilt unconscious on a mattress in the bedroom. Wilt was taken to the hospital by Harrison Township medics. She remained hospitalized for *Page 6 
approximately three weeks. Wilt testified that she has brain damage and poor short-term memory, that her left arm is numb and does not work, that she cannot use her left hand, and that she suffered a miscarriage.
 {¶ 17} Wilt had little memory of the events of December 20-21, 2005. She testified that she was in the bedroom of Martine's apartment with others when she heard Parker ask where she was. Parker came in and said, "I'm sorry I have to do this" and hit her in the head. Wilt's next memory was of waking in the utility closet. Parker came into the closet at one point, laughed, and kicked her in the leg. Although the utility closet door did not have a lock, Wilt did not attempt to leave. She explained that she was scared and "I didn't know what would happen if I got up and tried to leave." She next remembered waking in the hospital.
 {¶ 18} Deputies Eric Dingy, Gary Ridgeway, Steven Gephart, and John Campell of the Montgomery County Sheriff's Department, as well as Detectives Leslie Bunch and John Clymer, testified to their investigation and the gathering of evidence from apartment 3C. The officers collected blood samples, a chair with blood stains, a red shirt, hair clippers, orange-handled scissors, hair, a white blanket, a purple comforter, and wet clothing from the apartment. Detective Dingy collected Parker's clothing from the Montgomery County Jail, and Detective Clymer obtained a DNA sample from Wilt. Amy Wunderlich of the Miami Valley Regional Crime Lab testified that Wilt's blood was located on the black pants and white jersey that Parker had been wearing on the night of December 20, 2005.
 {¶ 19} On appeal, Parker claims that the trial court erred in accepting the testimony of Cruz and Matheny, because they were under the influence of crack cocaine at the time *Page 7 
of the alleged offenses. He also claims that they were not competent to testify, pursuant to Evid.R. 601 and 602.
 {¶ 20} There is no evidence to indicate that Cruz and Matheny were incompetent to testify. Cruz testified that she had been "clean" for sixty days, and there is no evidence that Matheny was under the influence of crack cocaine at trial.
 {¶ 21} Although both Cruz and Matheny testified that they were under in the influence of crack cocaine during the night of December 30, 2005, both testified that they could see and remember the events that occurred. When asked how crack cocaine affected her, Cruz stated: "I was just moving too much, going around, doing things. Just that — I don't know how to explain it. I could see everything that was going on around me and I remember it all pretty clearly but, obviously, I was under the influence so, obviously, there was something not right with me. * * * Just everything is real vivid when you're high and just everything's real loud when I'm high * * *." Matheny stated crack gave her a "speedy high" and "changes the way I view and see things if I'm up for weeks." She stated that she was in her second day of being awake when the events occurred and she "can remember everything very vividly."
 {¶ 22} Based on the record, Cruz and Matheny were competent to testify under Evid.R. 601 and 602. The fact that Cruz and Matheny were under the influence of crack cocaine at the time of the alleged offenses affects only the credibility of their testimony, not its admissibility. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. *Page 8 
 {¶ 23} In finding Parker guilty of felonious assault, the court found that "[t]he testimony of all of the witnesses in the case while vigorously cross-examined and certainly subject to the infirm ities of the influence of drugs in the case nevertheless are corroborated to the extent that the Court finds that by proof beyond a reasonable doubt the defendant did knowingly cause a serious physical harm the Court just referred to the person of Amber Wilt." As to the kidnapping charge, the trial court also found that "the testimony of the witnesses, albeit influenced to some extent by their drug involvement, does establish by proof beyond a reasonable doubt that each element of the offense here of kidnapping is met." Upon review of the transcript, we find no fault with the trial court's crediting of the testimony of Cruz and Matheny. Parker's convictions are based on sufficient evidence and are not against the manifest weight of the evidence.
 {¶ 24} The first assignment of error is overruled.
 {¶ 25} II. "THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF THE DEFENDANT, DENYING HIM DUE PROCESS IN CONVICTING AND SENTENCING THE DEFENDANT ON TWO OFFENSES AND FOR CONSECUTIVE TERMS."
 {¶ 26} In his second assignment of error, Parker claims that the trial court erred when it failed to merge the offenses of felonious assault and kidnapping as allied offenses of similar import.
 {¶ 27} "R.C. § 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct, which could violate the Double Jeopardy Clauses of the United States and Ohio constitutions." State v. Coffey, Miami App. No. 2006-CA-6, 2007-Ohio-21, at ¶ 15. The statute reads: *Page 9 
 {¶ 28} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 29} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where this conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted for all of them."
 {¶ 30} In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the elements of offenses must be compared in the abstract. State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, paragraph one of the syllabus. In Rance, the Supreme Court of Ohio established a two-part test to determine when convictions may be obtained for two or more allied offenses of similar import. In the first step, the elements of the offenses at issue are compared in the abstract to determine whether the elements correspond to such a degree that the commission of one offense will result in the commission of the other. Id. at 638. If the offenses are dissimilar, the inquiry ends and multiple convictions are permitted. Id. at 636. In contrast, if the offenses are allied offenses of similar import under R.C. 2941.25(A), a defendant may not be convicted of both of them unless, as stated in R.C.2941.25(B), the offenses were committed separately or with separate animus. Rance, 85 Ohio St.3d at 638-39; State v. Jones,78 Ohio St.3d 12, 13-14, 1997-Ohio-38, 676 N.E.2d 80.
 {¶ 31} A few months after Rance was decided, the supreme court concluded that a kidnapping specification merged with an aggravated robbery specification, because the *Page 10 
offenses "were committed with no separate animus, as there was no showing of a prolonged restraint, significant asportation, or secret confinement of the victims." State v. Fears, 86 Ohio St.3d 329, 344,1999-Ohio-111, 715 N.E.2d 136. Several appellate courts have acknowledged that "some debate exists as to whether [Fears] implicitly overruled the Rance decision." State v. Slabaugh, Stark App. No. 2005-CA-6, 2005-Ohio-5307; see, also, State v. Cruz, Medina App. No. 03CA0031-M, 2003-Ohio-4782; State v. Lowe, 164 Ohio App.3d 726,2005-Ohio-6614, 843 N.E.2d 1243, ]}27. Those same courts have noted that the supreme court has continued to use the Rance abstract analytical framework since Fears. E.g., Lowes at ]}27. We have repeatedly followedRance, as well. E.g., State v. Gabriel, Montgomery App. No. 21343,2007-Ohio-794. {¶ 32} Parker was convicted of felonious assault, in violation of R.C. 2903.11 (A)(1), and kidnapping, in violation of R.C.2905.01(A)(2). R.C. 2903.11(A)(1) provides: "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn."
 {¶ 33} R.C. 2905.01(A)(2) states:
 {¶ 34} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * *
 {¶ 35} "(2) To facilitate the commission of any felony or flight thereafter[.]"
 {¶ 36} A comparison of the elements of these two offenses reveals that felonious assault may be committed without committing kidnapping, and vice versa. See State v. Brown, Montgomery App. No. 19113, 2002-Ohio-6370 (R.C. 2903.11(A)(2) and R.C. *Page 11 2905.01(A)(3) are not allied offenses of similar import); State v.Totarella, Lake App. No. 2002-L-147, 2004-Ohio-1175; Cruz, supra. Because each of the offenses of which Parker was convicted can be committed without necessarily committing the other, they are not allied offenses of similar import, and the trial court did not err in refusing to merge the offenses.
 {¶ 37} Moreover, we have little difficulty concluding that the kidnapping was not merely incidental to the felonious assault and that the two offenses were committed with a separate animus. See State v.Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345. The record demonstrated that Parker confined Wilt in the utility closet for a prolonged period of time. Although Cruz observed Parker hit Wilt while she was in the closet, she was left alone there for extended periods of time and, as Matheny testified, others were prohibited from going to that area. Matheny specifically stated that she returned to the apartment to find Parker in the living room, that she heard Wilt crying in the kitchen area, and that she was not allowed in the kitchen area. Although the utility closet was not locked, the testimony supports a reasonable conclusion that Wilt's liberty was restrained. In sum, the record amply supports the conclusion that the felonious assault and the kidnapping were committed with a separate animus and that there was prolonged restraint.
 {¶ 38} Parker's second assignment of error is overruled.
 {¶ 39} III. "THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS SIXTH AMENDMENT RIGHT TO TRIAL BY JURY IN IMPOSING CONSECUTIVE SENTENCES."
 {¶ 40} In his third assignment of error, Parker claims that the trial court failed to make adequate findings prior to imposing consecutive sentences, as required by State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473. Alternatively, Parker argues *Page 12 
that the trial court's judicial findings violated his right to a trial by jury, in contravention of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.E.2d 403.
 {¶ 41} In Comer, the Supreme Court of Ohio held that, pursuant to R.C.2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing.Comer, supra, at paragraph one of the syllabus. It further held: "Pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." Id. at paragraph two of the syllabus.
 {¶ 42} In Foster, the supreme court held that parts of Ohio's felony sentencing scheme are unconstitutional. The unconstitutional provisions include R.C. 2929.14(B), (C), (D)(2)(b), (D)(3)(b), and (E)(4); R.C.2929.19(B)(2); and R.C. 2929.41(A). The court found R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2), which concern the imposition of consecutive sentences, to be unconstitutional because they "require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences."Foster at ]}65-67,1J83. The supreme court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(E)(4), R.C.2929.19(B)(2), and R.C. 2929.14(D)(2)(b). Id. at TJ97.
 {¶ 43} Because Foster severed the provisions on which Comer relied,Comer has been, in effect, overruled, and its mandates no longer apply.State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ]}26. Under Foster, judicial factfinding is no longer required before the imposition of consecutive prison terms. Foster at ¶ 99; Mathis at ¶ 37. *Page 13 
 {¶ 44} Parker asserts that the trial court erred in sentencing him as a repeat violent offender and in imposing consecutive sentences. On April 16, 2006, the trial court imposed two consecutive seven-year prison terms with the following explanation:
 {¶ 45} "Well, Mr. Parker, the Court heard the evidence in this case and finds that your conduct was particularly egregious with respect to this particular defendant, which could easily have resulted in a homicide. The Court finds that adequate cause exists to impose consecutive sentencing in the matter. The Court does note that you have a prior felonious assault conviction in 2000, requiring the Court to impose two consecutive seven-year sentences of confinement at the Ohio Department of Rehabilitation and Correction.
 {¶ 46} Neither the transcript of the sentencing hearing nor the judgment entry stated that the trial court made findings under any of the unconstitutional portions of the sentencing statute. The trial court did not find Parker to be a "repeat violent offender," and no additional penalty was imposed under R.C. 2929.14(D)(2)(b). In fact, Parker did not receive the maximum allowable prison term for either felonious assault (eight years) or kidnapping (ten years). See R.C. 2929.14(A). Although the court stated that it was "required" to impose consecutive sentences due to Parker's prior conviction, no such requirement existed under the unconstitutional part of the statute. See R.C. 2929.01(E)(4). In addition, although the court found "adequate cause" to impose consecutive sentences due to the egregiousness of Parker's conduct, this statement does not suggest that the trial court improperly made statutory findings. Rather, it merely states that the trial court believed that consecutive sentences were warranted under the circumstances presented. In sum, while the court offered some reasons for imposing consecutive sentences, the *Page 14 
record does not indicate that Parker's sentence was based on improper fact-finding under the unconstitutional portions of the sentencing statute.
 {¶ 47} The third assignment of error is overruled.
 {¶ 48} IV. "DEFENDANT WAS DENIED A FAIR TRIAL AND HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL IN THAT HE HAD INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 49} In his fourth assignment of error, Parker claims that his trial counsel rendered ineffective assistance.
 {¶ 50} In order to demonstrate ineffective assistance of counsel, Parker must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d. 151, at ¶ 199. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland,466 U.S at 694; Bradley, 42 Ohio St.3d at 142. {¶ 51} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of *Page 15 
counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.; State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 52} On appeal, Parker states that his trial counsel was ineffective in three respects.
 {¶ 53} First, Parker argues that his trial counsel should have objected to the testimony of Cruz, Matheny, and Wilt on the ground that they were not competent to testify. As stated above, Cruz, Matheny and Wilt were competent to testify, and their use of crack cocaine at the time of the offenses affected the credibility, not the admissibility, of their testimony. We further note that each of these witnesses was thoroughly cross-examined by defense counsel. Parker's counsel was not ineffective in failing to object to Cruz's, Matheny's, and Wilt's competence to testify.
 {¶ 54} Second, Parker asserts that his counsel failed to object to Cruz's testimony regarding what she viewed on the video monitor. He argues that there was no independent corroboration that the images reasonably depicted the actual scene. Cruz testified that there was a camera outside of apartment 3C that showed the front walkways and fronts of apartments 3C and 3B and the area to the parking lot. Cruz further stated that she viewed the monitor for that camera from a chair in the living room area while others watched either standing up or from the couch. Cruz testified that the monitor was black and white. Deputy Gephart corroborated that there was a small camera lens sticking out of the apartment window, and that the monitor was in the living room area. Although Gephart could not state which direction that camera was pointing, we have no difficulty finding that Cruz was competent to testify to what she observed on the surveillance *Page 16 
monitor. Parker's counsel was not ineffective in failing to object to Cruz's testimony regarding her observations of the surveillance monitor.
 {¶ 55} Third, Parker argues that his trial counsel should have advised him of his right to a jury trial before the trial court could impose consecutive sentences. He states: "Although Mr. Parker signed a waiver of jury trial prior to trial, there is no indication that he was aware of his right to have a jury determine whether he would be sentenced to consecutive terms. Without knowledge of this right on the record, there could be no knowing, voluntary, and intelligent waiver."
 {¶ 56} Under Foster, the court was not required to hold a jury trial in order to impose consecutive sentences. Rather, as stated supra, a court has the discretion to impose consecutive prison terms without making any findings of fact. Accordingly, Parker's counsel acted reasonably when he failed to advise him of the alleged right to a jury trial before the trial court could impose consecutive sentences because no such right exists.
 {¶ 57} The fourth assignment of error is overruled.
 {¶ 58} The judgment will be affirmed.
BROGAN, J., and GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1