OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Christopher A. Devaughns, filed June 16, 2006. Devaughns was convicted of one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of kidnaping, in violation of R.C. 2905.01(A)(3). The trial court sentenced Devaughns to eight years on the felonious assault conviction and ten years on the kidnaping conviction, to be served consecutively. The *Page 2 
victim herein is Lynelle Moore, the mother of Devaughns' daughter, Crystal. Devaughns had custody of the child, and Lynelle would visit Devaughns' apartment about once a month. Lynelle is an admitted drug addict.
 {¶ 2} On February 26, 2006, Lynelle went to Good Samaritan Hospital for treatment for numerous injuries. Lynelle's injuries were life threatening and included two fractured ribs, a collapsed lung, blunt force trauma to the chest wall, burns on her arm, multiple bruises, and a fractured and dislocated finger. Lynelle told Dayton Police Officer David Blackburn, who responded to the hospital, that Devaughns beat her, causing her injuries two days earlier at his apartment in Dayton. Lynelle was hit, kicked, and beaten with an impact wrench and a table, and burned with hot water. After the assault, Lynelle testified that Devaughns told her to go upstairs to the bedroom and "stay in there and heal up, heal up in a couple of weeks." She stated that she lay on her daughter's bed and could not fall asleep because she was afraid she would not wake up. Lynelle stated that she "used the bathroom in the bed" because Devaughns told her not to come out of the room.
 {¶ 3} Lynelle left the apartment once with Devaughns to visit his brother, and she testified that she could not flee from Devaughns at that time because of her injuries. According to Lynelle, she was only able to get away from Devaughns when he took her daughter and left the apartment. She did not leave before then because she was afraid Devaughns would "beat me up and kill me." When Lynelle did leave, she did not immediately seek treatment for her injuries but instead went to a drug house where she spent the night with her sister, Katrina Moore. According to Katrina, she "medicated" Lynelle with heroin there.
 {¶ 4} Four Dayton Police Officers responded to Devaughns' home in Dayton later in *Page 3 
the day on February 26, 2006. Devaughns told the officers that his name was James Dozier, and he provided a social security number that matched the Dozier name per the computer in the officers' cruiser. When Devaughns was later being processed at the jail, however, a live scan of his fingerprint did not match the name he had given the officers. When confronted, Devaughns gave the officers his correct name, Christopher Devaughns, as well as the correct social security number and date of birth. James Dozier was actually Devaughns' brother who was killed in Viet Nam. According to Devaughns, he had been using the name Dozier since he was five years old.
 {¶ 5} At trial, the jury heard testimony from Lynelle and Katrina, Officer David Blackburn, who was dispatched to the hospital to interview Lynelle, Officer Christopher Wiggins, who was one of the officers who responded to Devaughns' home, Craig Stiver, an evidence technician for the Dayton Police Department who collected and processed evidence at Devaughns' apartment, Amy Wunderlick, a forensic scientist at the Miami Valley Regional Crime Laboratory, who tested evidence taken from Devaughns' apartment for the presence of blood, Brian Updyke, a detective with the Dayton Police assigned to the Bureau of Identification, who confronted Devaughns when his fingerprint scan did not match the name he provided the officers, Dr. James Decaestecker, the general surgeon who treated Lynelle at the hospital, and Devaughns.
 {¶ 6} Devaughns asserts three assignments of error. His first assignment of error is as follows:
 {¶ 7} "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} "When an appellate court analyzes a conviction under the manifest weight of the *Page 4 
evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence `weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment."State v. Dossett, Montgomery App. No. 20997, 2006-Ohio-3367.
 {¶ 9} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve."State v. DeHass (1997), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 10} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 11} Devaughns was charged with felonious assault, in violation of R.C. 2903.11(A)(1), which provides, "no person shall knowingly cause serious physical harm to another," and with kidnaping, in violation of R.C. 2905.01(A)(3), which provides, "[n]o person, by force, threat, or deception * * * shall remove another from the place where the *Page 5 
person is found or restrain the liberty of the other person, for the purpose to terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 12} According to Devaughns, a "careful review of the record reveals that the only damaging evidence against the Appellant came from the complaining witness, Lynelle Moore. While the State called seven additional witnesses to the stand, not one of them could testify or provide any evidence that Mr. Devaughns caused the injuries that were sustained by Lynelle Moore. Specifically, Katrina Moore Brooks, Officer David Blackburn and Dr. James Decaestecker only testified as to the complainant's injuries; they did not testify as to who caused her injuries. Officer Wiggins, Officer Stiver and Detective Updyke testified to ancillary facts regarding the investigation that were not really relevant to Mr. Devaughns' guilt or innocense."
 {¶ 13} Devaughns argues that Lynelle's testimony was not credible because she could not remember the exact date that Devaughns beat her, where exactly on her body he beat her, or how many times. While Lynelle stated that she could not leave Devaughns after he beat her, the fact that she left with him to go to see his brother and then returned to Devaughns' home impugns her credibility, according to Devaughns . Devaughns argues that Lynelle's credibility is further undermined by the fact that she had used drugs prior to visiting Devaughns and she did not immediately seek treatment for her injuries but instead used drugs subsequent to the attack.
 {¶ 14} Having reviewed the entire record, weighed all of the evidence and all the reasonable inferences, and considered the credibility of the witnesses, we cannot conclude that the fact finder clearly lost its way and created such a manifest miscarriage of justice such that Devaughns' conviction must be reversed and a new trial ordered. The indictment *Page 6 
charged Devaughns with committing the offenses against Lynelle between February 23 and 26, 2006. Lynelle testified that she arrived at Devaughns' apartment on either February 23 or 24, 2006. Dr. Decaestecker testified that Lynell's injuries and burns had been caused within three days of his examination of her on the 26th. While Lynelle could not provide a blow-by-blow account of her beating, Dr. Decaestecker's testimony regarding the injuries corroborated Lynelle's testimony that she had sustained blunt force trauma, bruising and burns. Further, Officer Blackburn testified that Lynelle was "very clear" at the hospital in describing what happened to her; "she was very conscious of what she was telling me" about Devaughns.
 {¶ 15} The State recovered blood from the table Lynelle claimed Devaughns beat her with, and from the mattress where Lynelle later rested, and from a belt retrieved from the apartment that Lynelle identified as hers. The State presented photos of Lynelle's injuries to the jury. There was no evidence presented that Lynelle's drug use prevented her from being able to identify who caused her injuries; Lynelle had known Devaughns for at least 11 years and had a child with him.
 {¶ 16} The jury obviously found Lynelle's testimony to be more credible than that of Devaughns as clearly illustrated by this exchange which occurred during Devaughns' cross examination: When asked who paid for the bulk of his child's daycare expenses, Devaughns responded, "* * * — the government does * * *
 {¶ 17} "Q. And that's under the name of James Dozier.
 {¶ 18} "A. Yes, that's correct. It's really complicated.
 {¶ 19} "* * *
 {¶ 20} "Q. Why do you suppose it's complicated? *Page 7 
 {¶ 21} "A. Because that's not my real name * * * . I have two identities. It's kind of screwing me up. A lot of pressure and I snap.
 {¶ 22} "Q. Do you sometimes — is one identity Christopher Devaughns and sometimes live as James Dozier?
 {¶ 23} "A. Just James Dozier. Just James Dozier. That's who I am."
 {¶ 24} Devaughns then admitted that he once had a driver's license and drove trucks under the Devaughns name, and that he is under a child support order for another child under the Devaughns name.
 {¶ 25} In terms of Lynelle's injuries, Devaughns initially stated that he noticed Lynelle was "messed up" on Tuesday, which would have been February 21, 2006, but that he didn't take her to see a doctor because "she wasn't that bad off." Devaughns stated that her hand was not injured, and she was not burned. Devaughns was then asked,
 {¶ 26} "Q. Okay. What are you telling the jury? You said you saw her and she was messed up and injured. What injury did you see on her?
 {¶ 27} "A. Well, like I say, I didn't see any injuries `cause she had her coat on. And then we hung around for President's Day and the day after President's Day, and then that was the last I seen of her."
 {¶ 28} Devaughns also testified that he uses drugs and suffers from memory problems. He was asked, "Are you saying that when you beat Lynelle with that table, it was because you snapped?
 {¶ 29} "A. No. I'm going to say I don't remember beating her. I don't. I actually don't. I'm saying this, I feel bad about that, but I'm not saying I did it.
 {¶ 30} "Q: You aren't saying you did it. You don't remember. *Page 8 
 {¶ 31} "A. No, I don't remember. That's what I said, shoot, I have a — like I said, I don't really want to start making excuses for myself right now. I'll answer your questions."
 {¶ 32} It was up to the jury to determine whether, and to what extent, to credit the testimony of Lynelle and Devaughns, and the other witnesses. On this record we cannot conclude that the jury lost its way in convicting Devaughns of felonious assault and kidnaping, or that his convictions are against the manifest weight of the evidence, Devaughns' first assignment of error is overruled.
 {¶ 33} Devaughns' second assignment of error is as follows:
 {¶ 34} "THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PROVIDE THE APPELLANT THE OPPORTUNITY TO ADDRESS THE TRIAL COURT PERSONALLY BEFORE A SENTENCE WAS IMPOSED."
 {¶ 35} "* * * At the time of imposing sentence, the court shall do all of the following: Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim. R. 32(A)(1).
 {¶ 36} While the record reveals that the trial judge addressed counsel for Devaughns, the judge did not afford Devaughns an opportunity to speak on his own behalf. The State concedes that "failure to do so is reversible error, * * * and this Court is required to reverse his sentence and remand the case to the trial court for resentencing." We agree, and Devaughns' second assignment of error is sustained.
 {¶ 37} Devaughns' third assignment of error is as follows:
 {¶ 38} "THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO MERGE THE OFFENSES OF FELONIOUS ASSAULT AND KIDNAPING AS ALLIED OFFENSES *Page 9 
OF SIMILAR IMPORT."
 {¶ 39} Devaughns argues that "the restraint of the complainant was based solely on her inability to leave due to the injuries she sustained as a result of the felonious assault. Thus, the kidnaping offense was merely incidental to the offense of felonious assault."
 {¶ 40} "`R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct, which could violate the Double Jeopardy Clauses of the United States Constitutions.' (Internal citation omitted). The statute reads:
 {¶ 41} `(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 42} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where this conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted [of] all of them.'
 {¶ 43} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the elements of offenses must be compared in the abstract. (Internal citation omitted). * * * the Supreme Court of Ohio established a two-part test to determine when convictions may be obtained for two or more allied offenses of similar import. In the first step, the elements of the offenses at issue are compared in the abstract to determine whether the elements correspond to such a degree that the commission of one offense will result in the commission of the other. * * * If the offenses are dissimilar, the inquiry ends and multiple convictions are permitted. * * * In contrast, if the offenses are allied offenses of *Page 10 
similar import under R.C. 2941.25(A), a defendant may not be convicted of both of them unless, as stated in R.C. 2941.25(B), the offenses were committed separately or with separate animus." State v. Parker, Montgomery App. No. 21599, 2007-Ohio-1512.
 {¶ 44} The Supreme Court of Ohio established guidelines to determine whether kidnaping and another offense are committed with a separate animus:
 {¶ 45} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each sufficient to support separate convictions;
 {¶ 46} "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."State v. Logan (1979), 60 Ohio St.2d 126, 129, 397 N.E.2d 1345.
 {¶ 47} "A comparison of the elements of [felonious assault and kidnaping] reveals that felonious assault may be committed without committing kidnaping, and vice versa." Parker. Since each of the offenses herein can be committed without necessarily committing the other, they are not allied offenses of similar import. Further, even if Devaughns could establish that the offenses are allied offenses of similar import, the kidnaping was not merely incidental to the felonious assault. Devaughns confined Lynelle for a significant period following the assault, telling her to go upstairs "and heal up, heal up in a couple of weeks." While Lynelle did leave the apartment briefly with Devaughns to see his brother, *Page 11 
she could not escape from Devaughns due to her injuries. Lynelle believed that if she fled from Devaughns, he would kill her, a reasonable fear given the beating she already had received. In other words, the kidnaping continued for a significant time after the assault, and the record supports the conclusion that the offenses were committed with a separate animus and that there was prolonged restraint. Devaughns' third assignment of error is overruled.
Reversed and remanded for resentencing.
 FAIN, J. and GRADY, J., concur. *Page 1