[Cite as *State v. Bauman*, 2018-Ohio-4913.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

STEPHEN R. BAUMAN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0016**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2015 CR 380

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. John Gamble*, Columbiana County Prosecutor's Office, Columbiana County Courthouse, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee, and

*Atty. C. Williams*, Williams & Associates Co., LPA, Highland Corner, 1376 East State Street, Salem, Ohio 44460, and *Atty. Janet Stich,* 1799 Akron Peninsula Road, Akron, Ohio 44313, for Defendant-Appellant.

Dated:  December 6, 2018

_____

**Donofrio, J.**

{¶1}   Defendant-appellant, Stephen Bauman, appeals from a Columbiana County Common Pleas Court judgment convicting him of felonious assault and failure to remain at the scene of an accident, following a bench trial.

{¶2}   On August 2, 2015, appellant was driving his pickup truck south on Ellsworth Avenue in Salem.  At the same time, Curtis Masters was riding his bicycle south on Ellsworth Avenue.  According to Masters, appellant passed him and almost hit him with the right mirror of his truck.  As appellant passed Masters, the two men yelled at each other.  As he passed Masters, appellant moved to the right and stopped abruptly.  Masters swerved to the left and collided with appellant's truck bed.  Masters flipped over the truck's bed and onto the street.

{¶3}   Masters got up and another heated exchange occurred between the two men.  During the argument, Masters punched appellant.  A witness phoned 911. Appellant soon drove away.  He pulled into a nearby parking lot.  An officer pulled into the lot after noticing appellant's truck.  When the officer pulled in, appellant left the lot. Another officer followed him out of the parking lot and initiated a traffic stop.  The officer did not file any charges during the stop.

{¶4}   On August 19, 2015, a Columbiana County Grand Jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2), and one count of failure to remain at the scene of an accident, a first-degree misdemeanor in violation of R.C. 4549.02(A).  The matter proceeded to a bench trial.  The court found appellant guilty as charged.  The court later sentenced appellant to two years in prison for the felonious assault and ten days in jail for leaving the scene of an accident, to be served concurrently.

{¶5}   Appellant filed a motion for a new trial citing newly discovered witnesses and evidence.  He then filed a notice of appeal.  On our limited remand, the trial court denied appellant's motion for a new trial.  Appellant then filed an amended notice of appeal on December 13, 2017.  He now raises seven assignments of error.

{¶6} We will address appellant's assignments of error out of order for ease of discussion.

{¶7} Appellant's third assignment of error states:

THE TRIAL COURT'S DENIAL OF MOTION FOR ACQUITTAL VIOLATED APPELLANT'S DUE PROCESS RIGHTS BECAUSE THE EVIDENCE IS INSUFFICIENT TO SUPPORT A GUILTY VERDICT FOR FELONIOUS ASSAULT AND FAILURE TO STOP AFTER ACCIDENT.

{¶8} Appellant argues that evidence presented at trial was insufficient to prove the elements of the offenses beyond a reasonable doubt. He alleges that the trial court based its decision on evidence that was not credible.

{¶9} An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard it uses to review a sufficiency of the evidence claim. *State v. Rhodes*, 7th Dist. No. 99-BA-62, 2002-Ohio-1572, at ¶ 9; *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

{¶10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶11} The court convicted appellant of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly cause or attempt to cause physical harm to another or by means of a deadly weapon or dangerous ordnance."

{¶12} The court also convicted appellant of failure to remain at the scene of an accident in violation of R.C. 4549.02(A). That statute provides that the operator of a motor vehicle involved in an accident on a public road must stop and remain at the scene until he gives his name, address, vehicle registration number to any person

injured in the accident, the occupants of the damaged vehicle, and the police officer at the scene. R.C. 4549.02(A)(1). It further provides that the operator shall remain at the scene of the accident until a police officer arrives. R.C. 4549.02(A)(2).

{¶13} We must examine the state's evidence to determine if it presented evidence going to each element of both offenses.

{¶14} David Bedell testified first. Bedell lives on Ellsworth Avenue and was outside when the accident occurred. (Tr. 30). He heard loud voices coming from the road. (Tr. 30). He then saw a pickup truck, about 100 yards away, stop suddenly with no signs of slowing down. (Tr. 30-31). He described the stop as so sudden that the front end of the truck dipped and the back end went up into the air. (Tr. 31). He noticed that a bicycle rider was behind the truck. (Tr. 30). He saw the rider go over his handlebars and collide with the truck, then roll into the road. (Tr. 30-31). Bedell then called 911, told them what he saw, and gave them a description of the truck. (Tr. 34).

{¶15} Following the accident, Bedell witnessed the altercation between appellant and Masters. (Tr. 33). He heard Masters tell appellant that he had a right to be there. (Tr. 33). He saw hands moving back and forth between the men, and it looked to him as if someone was punching somebody. (Tr. 33). He relayed to the dispatcher the direction the truck traveled after the accident. (Tr. 34). Bedell testified there was no doubt in his mind that the pickup truck was responsible for the accident. (Tr. 33).

{¶16} Masters testified next. Masters testified that on the day of the accident, he was finishing a long training ride of more than 70 miles in preparation for an upcoming competition. (Tr. 67). He was traveling about 25 miles per hour on Ellsworth Avenue on his way to his home in Salem. (Tr. 68-70). He had his head down in an aerodynamic position. (Tr. 69). Masters stated that he noticed a mirror of a pickup truck narrowly miss his left arm. (Tr. 73). He said the driver of the truck had his window down and was screaming to the point where spit was coming out of his mouth. (Tr. 73).

{¶17} Masters then yelled back at the driver, at which point the driver veered his truck into Masters narrowly missing his front tire by about an inch. (Tr. 75-76). He stated that he tried to veer left, but did not make it, striking the rear side of appellant's truck. (Tr. 77). Masters described the event as happening very quickly. (Tr. 76-77). He

stated that appellant intentionally came into his path and stopped. (Tr. 111). Masters explained that he struck the rear of the truck to the right of the license plate. (Tr. 111). After the collision, Masters stated he landed in the center lane. (Tr. 97).

{¶18} Masters testified that even after the accident, appellant continued to yell at him. (Tr. 80). He stated that he was "beside himself," when he noticed appellant attempting to open his door. (Tr. 80). He went up to appellant's door. (Tr. 82). He claimed he had his hand on appellant's door, while he told appellant that he had a right to be there. (Tr. 82). At this point, Masters claimed that appellant began to raise his hands, so Masters punched appellant in the face. (Tr. 82-83). He stated that he punched appellant because appellant was aggressive towards him and angry. (Tr. 101). Masters said appellant again raised his hands, so he punched him again. (Tr. 82-83). Masters told appellant he was going to call the police, at which point appellant drove away. (Tr. 83).

{¶19} Masters testified that because of the accident he had a lot of bruising, was pretty "beat up," and had a headache. (Tr. 85). He stated that his shoulder still gets sore because of the accident. (Tr. 88). Masters stated that the accident also cracked the carbon fiber on his triathlon bike frame beyond repair, which cost more than $5,000 to replace. (Tr. 85-87). Masters testified that he competed in an Iron Man competition a few weeks after the accident, which included a one-and-a-half mile swim, 56-mile bike ride, and a half marathon. (Tr. 87-88). He felt the effects of the crash during the competition. (Tr. 88).

{¶20} Salem Patrolman Steven LaRosa testified next. In conjunction with his testimony, the court admitted the 911 call regarding the incident. Patrolman LaRosa responded to the scene of the accident. (Tr. 117). Dispatch informed him that the suspect's vehicle was a red truck. (Tr. 118). He noticed a red truck in the community center parking lot as he drove by, but still went to the scene of the accident to make sure there were no injuries. (Tr. 119). He relayed the fact that he saw a red truck in the community center parking lot over the radio. (Tr. 120).

{¶21} Salem Police Sergeant Daniel Green testified next. Sgt. Green heard about the accident and the vehicle description over his police radio. (Tr. 146). He indicated that he would check the community center parking lot. (Tr. 149-150). When

he entered the parking lot, he observed a truck matching the description exiting the lot. (Tr. 152-153). He recognized appellant. (Tr. 151). He observed appellant travel onto Ellsworth Avenue and conveyed this information on his radio. (Tr. 154).

{¶22} The next witness was Salem Police Officer Richard Miller. Officer Miller heard dispatch advise that there had been a crash involving a vehicle and a bicycle. (Tr. 172-173). Officer Miller heard Sgt. Green advise that a truck matching the correct description was coming out of the community center lot, so Officer Miller got behind it and initiated a traffic stop. (Tr. 176). Officer Miller stated there was no issue with the traffic stop. (Tr. 184).

{¶23} John Shaw was the state's final witness. Shaw was heading northbound on Ellsworth Avenue at the time of the accident. (Tr. 191). He noticed a bicycle about 500 yards away in the southbound lane. (Tr. 192). The bicycle was to the furthest right side of the rode. (Tr. 192). He noticed a red truck following the bicycle. (Tr. 193). He observed that the red truck did not attempt to get around the bicycle. (Tr. 193). He veered to the right in order to allow the red truck room to pass the bicycle, but the red truck still did not move. (Tr. 193). Shaw testified he thought the truck's mirror was going to hit the bicycle. (Tr. 194). He pulled over to the side of the road and watched the truck and bicycle in his rearview mirror. (Tr. 195). He stated he saw the truck stop abruptly and the bicycle flip into the bed of the truck. (Tr. 195). His initial thought was that the action was a "road rage" type "brake check." (Tr. 196).

{¶24} Shaw testified he then saw the bicyclist get up and approach the passenger window. (Tr. 198). He saw what he believed to be arguing, then the bicyclist flinch as if to avoid something. (Tr. 198). After the bicyclist flinched, he saw the bicyclist throw a couple of punches. (Tr. 199). After the truck left the scene, Shaw went and checked on the cyclist. (Tr. 199). He observed that the bicyclist was a little bit shaken and had bumps and scratches on his knees. (Tr. 200). Shaw stated that he had no doubt that the driver of the truck intentionally slammed on his brakes so that the bicyclist would slam into him. (Tr. 201).

{¶25} Appellant argues that the state did not prove that he acted "knowingly." "A person acts knowingly, regardless of purpose, when the person is aware that the

person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶26}** When examining the evidence in a light most favorable to the prosecution, the testimony of the witnesses was sufficient to establish that appellant acted knowingly. Appellant slammed on his brakes in the middle of the road, in a manner described by Shaw as a road rage type brake check. In addition, Masters testified that appellant intentionally came into his path and stopped.

**{¶27}** R.C. 2901.01(A)(3) defines physical harm as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Masters testified that he had bruising, a headache, and lingering shoulder pain. Therefore, the evidence was sufficient to establish that the appellant caused physical harm to the victim.

**{¶28}** Additionally, a vehicle is a deadly weapon when the offender uses it in a manner likely to produce death or grave bodily harm. *State v. Bandy*, 7th Dist. No. 10-MA-74 at ¶ 22, citing *State v. Tortarella*, 11th Dist. No.2002-L-147, 2004-Ohio-1175, ¶ 64. Appellant drove his vehicle into the path of the victim and abruptly slammed on his brakes thereby using it as a deadly weapon.

**{¶29}** As to failure to remain at the scene of an accident, the evidence clearly demonstrated that appellant had knowledge of the collision. He stopped and argued with Masters after the collision then he drove away.

**{¶30}** In sum, there was sufficient evidence to support appellant's convictions.

**{¶31}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶32}** Appellant's first assignment of error states:

> THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT AND FAILURE TO STOP AFTER ACCIDENT BECAUSE SUCH FINDINGS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶33}** Here appellant argues the weight of the evidence did not support his convictions. He contends that his actions on the road were not intentional. Appellant

Case No. 17 CO 0016

claims the reason he stopped suddenly in the middle of the road was confusion caused by Masters yelling.

**{¶34}** According to his version of events, appellant did not notice Masters when he passed him. He testified that Masters maneuvered his bike into the pathway of his truck. He claimed that after safely passing Masters, he heard yelling so he stopped. He claimed that at this point, Masters drove his bike into the back of his truck.

**{¶35}** Appellant asserts that after the accident, Masters walked up to his truck, blocked him from exiting the vehicle, and punched him in the face twice. He claims that he left the scene of the accident as a direct result of the altercation, in fear of his safety.

**{¶36}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id*. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

**{¶37}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶38} In conducting a manifest weight of the evidence review, we must consider appellant's evidence in his defense in addition to the state's evidence set out above.

{¶39} Appellant testified that on the day in question he was driving home after a bike ride. (Tr. 218). He stated that he successfully went around Masters, at which point Masters flew into a rage. (Tr. 220). He claimed that the reason he did not attempt to pass Masters by going around him when Shaw gave him room was that he did not think traffic rules allowed you to cross over a double-yellow line. (Tr. 244-245). Appellant said he had a verbal exchange with Masters as he went past. (Tr. 221). He said that while his right bumper was close to the bicycle, Masters swerved into him. (Tr. 221). He claimed there was still enough room for them not to hit. (Tr. 221). According to appellant, after he drove 25 yards further down the road he heard screaming. (Tr. 222). He stated that because of the screaming he abruptly stopped in order to make sure that he did not hit the bicycle. (Tr. 222). He stated at this point Masters was screaming like a maniac, and hit the back of his truck, catapulting into the back of the truck. (Tr. 222). He said Masters got up, came over to the truck still yelling, and hit him twice. (Tr. 223). Appellant opined Masters was consumed with road rage. (Tr. 265).

{¶40} Appellant stated that he drove to the community center and sat in the parking lot. He said he did not leave the scene to avoid detection by police. (Tr. 231). He acknowledged that he said on video that the reason he stopped was that he thought maybe he hit the bicyclist. (Tr. 232). He claimed to have not seen the police officer in the community center parking lot, otherwise he would have stopped. (Tr. 250). He stated that the reason he sat in the parking lot was to wait for the police to come. (Tr. 251). He admitted that he saw two police officers going south. (Tr. 253). He said he pulled out and headed south in order for the police, who went that direction, to see him. (Tr. 254).

{¶41} As to the felonious assault conviction, appellant takes issue with the fact that the court found the state's witnesses more convincing than him. He points to inconsistencies in describing the accident. He also notes that Bedell was 100 yards away from the scene, and Shaw was 70 yards away. But reliability of witness testimony is an issue left to the trier of fact, whose opportunity to assess the witnesses is superior

Case No. 17 CO 0016

to that of the reviewing court. *State v. Caplan*, 7th Dist. No. 03-MA-91, 2004-Ohio-4990, ¶ 15, citing *State v. Bezak*, 9th Dist. No. 18533, 1998 WL 103336 (Feb. 18, 1998) (citation omitted).

**{¶42}** When examining the evidence, we cannot conclude that the trial court lost its way in determining that some witnesses were more credible than others. In fact, the court explained its conclusion regarding testimony: "To believe [appellant] that he was well clear of Mr. Masters before stopping suddenly, I would also have to believe that Mr. Masters continued south on Ellsworth and intentionally crashed his expensive carbon fiber bicycle into the rear tailgate and bumper of the truck, thereby exposing himself to serious personal injury."

**{¶43}** The court also viewed the act of passing Masters in the manner described by Masters and witnesses as an attempt to crowd or bully, which in itself could be an act of aggression. In addition, Shaw testified that he was so troubled by how close appellant was to Masters, that he actually pulled over to the side of the road. The court believed Masters' and Shaw's testimony regarding who the aggressor was in the situation. When the reviewing court examines a trial court decision, and "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Anderson*, 7th Dist. No. 14-BE-0036, 2016-Ohio-4800, ¶ 19, quoting *Dyke*, 2002-Ohio-1152.

**{¶44}** Appellant additionally contends that it was error for the court to conclude that his vehicle was a deadly weapon. This court has held that:

> When an automobile is used in a manner likely to produce death or grave bodily harm, it can be classified as a deadly weapon under R.C. 2923.11. *State v. Tortarella*, 11th Dist. No.2002-L-147, 2004-Ohio-1175, at ¶ 64; *State v. Allsup*, 3d Dist. Nos. 6-10-06, 6-10-07, 2011-Ohio-405, at ¶ 23. "When determining whether an automobile is a deadly weapon, a court should consider the intent of the user, the nature of the weapon, the manner of its use, the actions of the user and the capability of the instrument to inflict death or serious bodily injury." *State v. Evans*, 10th Dist. No. 01AP-112, 2002-Ohio-3322, ¶ 22 citing *State v. Gimenez* (Sept.

Case No. 17 CO 0016

4, 1997), 8th Dist. No. 71190, *State v. Upham* (May 12, 1997), 12th Dist. No. CA96-08-157.

*Bandy*, 2011-Ohio-4332, ¶ 22.

**{¶45}** In this case, the trial court found that appellant purposefully stopped suddenly, knowing that physical harm to the victim was a probable result. Appellant's action of purposely, suddenly stopping his car directly in front of someone on a bicycle caused appellant to use his car as a deadly weapon.

**{¶46}** As to the failure to remain at the scene of the accident conviction, the evidence was undisputed that a collision occurred between appellant's truck and Masters' bicycle. The evidence was further undisputed that appellant left the scene of the accident and drove to a community center parking lot. Appellant testified that he left the scene because Masters assaulted him. But appellant chose to drive away from the scene without alerting police of the accident. Moreover, an officer pulled into the community center parking lot after noticing appellant's truck. When the officer pulled into the parking lot, appellant drove out. Another officer followed appellant out of the parking lot and initiated a traffic stop. This evidence demonstrated that the police had to track appellant down to question him about the accident because appellant failed to remain at the scene or to contact the police. Thus, the weight of the evidence supported appellant's conviction for failure to remain at the scene of an accident.

**{¶47}** In sum, appellant's convictions are not against the manifest weight of the evidence.

**{¶48}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶49}** Appellant's second assignment of error states:

APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED APPELLANTS CROSS-EXAMINATION OFFICER REGARDING VIDEO AND IN OVERRULING DEFENSE OBJECTIONS.

**{¶50}** During defense counsel's cross-examination of Patrolman LaRosa, counsel asked the patrolman, "[appellant] admitted to you from the beginning that he purposely put on his brakes; correct?" (Tr. 135). The prosecutor objected arguing the defense was attempting to elicit testimony about appellant's statements. (Tr. 136). The trial court sustained the objection, ruling that defense counsel could not attempt to bring appellant's statement in through the patrolman because it was hearsay. (Tr. 136).

**{¶51}** Appellant argues the court denied him the opportunity to confront a witness and erred in excluding this testimony.

**{¶52}** The admission or exclusion of evidence is within the trial court's broad discretion and this court will not reverse its decision absent an abuse of that discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (1996). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E .2d 144 (1980).

**{¶53}** Hearsay is an out-of-court statement, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible. Evid.R. 802.

**{¶54}** The trial court did not abuse its discretion by ruling that the officer's testimony would be hearsay. Defense counsel asked Patrolman LaRosa during cross-examination, "[Appellant] admitted to you from the beginning that he purposely put on his brakes; correct?" (Tr. 135). Patrolman LaRosa responded, "He did." Defense counsel then asked, "Why did he?" at which point the prosecution objected. (Tr. 136). The court sustained the objection because the statement was hearsay.

**{¶55}** Appellant argues that limiting the scope of cross-examination denied him his confrontation clause rights. But this court has observed that a criminal defendant's right to cross-examine a witness is not unlimited. *State v. Williams*, 7th Dist. No. 09-MA-11, 2010-Ohio-3279, ¶ 18, quoting *State v. Freeman*, 7th Dist. No. 07-JE-5, 2008-Ohio-2925. In addition, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15,

20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Hearsay is not admissible evidence. Therefore, the court properly limited the scope of the cross-examination.

{¶56} Moreover, appellant testified as to what he told the officers during the stop, and the court allowed him to use the audio and video from the stop to refresh his memory. Thus, the evidence was still admitted at trial.

{¶57} Appellant also argues that the court should have allowed the statements as hearsay exceptions pursuant to Evid.R. 803(1), (3), or (5).

{¶58} Evid.R. 803(1) is known as the present sense exception. Underlying the present sense exception is the principal that statements of perceptions describing the event and in close temporal proximity to the event bear a high degree of trustworthiness. *State v. Shaw*, 7th Dist. No. 12-MA-95, 2013-Ohio-5292, ¶ 24, quoting *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 35, 534 N.E.2d 855 (12th Dist.1987).

{¶59} The statements in this case were not uttered while perceiving the accident or directly thereafter. The statements were made during the traffic stop, after appellant left the scene of the accident, sat in the community center parking lot, and drove away. Thus, the Evid.R. 803(1) exception does not apply.

{¶60} Evid.R. 801(3) allows a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition. Seeing as the police were questioning appellant regarding a previous event, this exception did not apply.

{¶61} Evid.R. 803(5) permits admission of "a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly." Evid.R. 803(5). As noted above, appellant did use the video to refresh his recollection during cross-examination. Thus, the court did use Evid.R. 803(5) for its intended purpose during appellant's testimony.

{¶62} In sum, the trial court did not abuse its discretion in disallowing Patrolman LaRosa from testifying as to what appellant told him during the traffic stop.

{¶63} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶64} Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

{¶65} Appellant argues that he discovered new evidence after the trial that warranted a new trial. At the hearing on the motion for a new trial, Glen Cimaglia testified that Masters told him that he had actually chased down appellant.

{¶66} Appellant claims that he also learned during the motion for a new trial hearing that an "app" called "Strava" existed, on which Masters made posts relating to the accident. Appellant attached Masters' Strava posts from the time of the accident to his new trial motion. The posts showed that the day of the accident Masters made a post entitled "Crashes and punches" that showed the route he traveled, as well as the time and distance of the ride. The posts also showed that two days after the accident, Masters went on a 38.8-kilometer bike ride. Additionally, appellant contends there were "hundreds" of posts on Facebook regarding the accident. Appellant contends that the new testimony and evidence would have convinced the court to place less weight on Masters' testimony or at least would have been a mitigating factor in sentencing.

{¶67} Ohio uses a six-part test to determine whether the court should grant a motion for a new trial:

> To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

{¶68} *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus. We review the denial of a motion for new trial on the abuse of discretion standard. *State v. Williams*, 43 Ohio St.2d 88, 330 N.E. 2d 891 (1975), paragraph two of the syllabus.

Case No. 17 CO 0016

{¶69} Cimaglia's testimony does not carry with it the strong probability that it would change the result of the trial. As the trial court stated at the hearing on the motion for a new trial, even if the testimony were true, and the victim did indeed chase appellant, it would not change the action appellant took to "brake check" the victim. The due diligence requirement similarly bars the social media evidence. There apparently were "hundreds" of posts regarding the incident on social media. Although Strava may be a niche app for runners and cyclists, Facebook certainly is not. The Strava posts attached to the motion do not show anything material to the defense. As previously noted, the graveness of the victim's injury holds no bearing on appellant's conviction. Appellant did not attach any Facebook posts to the motion, so this court does not have the ability to know whether they would be material to the defense, or even if they exist at all. The appellate court is not permitted to add matter to the record that was not part of the trial court proceedings. *State v. Prieto*, 7th Dist. No. 07-MA-4, 2007-Ohio-7204, ¶ 36, citing *State v. Hill*, 90 Ohio St.3d 571, 573, 740 N.E.2d 282 (2001).

{¶70} Appellant found two new pieces of evidence, neither of which meet the requirements for a new trial, therefore the trial court's denial of the motion was not an abuse of discretion.

{¶71} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶72} Appellant's fifth assignment of error states:

APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶73} Here appellant argues that not finding the evidence presented with the motion for a new trial fell below the standard of reasonable representation and resulted in prejudice.

{¶74} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the

syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶75}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶76}** Regardless of if the social media posts did in fact exist, or if they provided evidence to bolster appellant's defense, the failure to investigate is not something that this court can infer from a silent record about how the pretrial investigation took place. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E. 3d 1096, ¶ 247, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E. 2d 263. In the case at bar, we cannot determine from the record that appellant's trial counsel failed to conduct an adequate pretrial investigation.

**{¶77}** Moreover, as discussed above, even if the social media posts existed and even considering the "Strava evidence," the evidence presented at trial would still demonstrate that appellant knowingly "brake checked" Masters and that appellant left the scene of the accident. Thus, appellant cannot show the required prejudice.

**{¶78}** Accordingly, appellant's fifth assignment of error is without merit and is overruled.

**{¶79}** Appellant's sixth assignment of error states:

APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS SET FORTH HEREIN.

**{¶80}** Appellant argues that the combination of the errors he alleged resulted in a denial of his right to a fair trial.

**{¶81}** Cumulative error provides that it is a cause for reversal when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each error alone does not individually constitute a cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256 (1987). When this court finds no error, the

doctrine does not apply. *State v. Lyons*, 7th Dist. No. 16-JE-0008, 2017-Ohio-4385, ¶ 46.

**{¶82}** None of appellant's assignments of error have merit. Therefore, the doctrine of cumulative error does not apply.

**{¶83}** Accordingly, appellant's sixth assignment of error is without merit and is overruled.

**{¶84}** Appellant's seventh assignment of error states:

THE TRIAL COURT ERRED IN THE IMPOSITION OF THE SENTENCE IMPOSED UPON APPELLANT.

**{¶85}** Appellant argues that his sentence was not proper because the trial court relied on aggravating factors that the evidence did not support. He argues that community control was an appropriate sentence. He does not take issue with his ten-day sentence for failure to remain at the scene of an accident.

**{¶86}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St. 3d 516, 2016-Ohio-1002, 59 N.E. 3d 1231, ¶ 1. Although the trial court must consider the relevant statutory factors, it is not required to discuss those considerations on the record. *State v. McCourt*, 7th Dist. No. 16-MA-0144, 2017-Ohio-9371, ¶ 9, citing *State v. Pyles*, 7th Dist. No. 13-BE-11, 2014-Ohio-4146, ¶ 6.

**{¶87}** The court sentenced appellant to two years in prison for second-degree felonious assault. A prison sentence for a second-degree felony is not mandatory, but presumed. R.C. 2929.13(D)(1). The possible prison sentences for a second-degree felony are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2). Thus, appellant's prison sentence was within the statutory range.

**{¶88}** A court may sentence an offender to community control or a combination of community control if it makes the finding that the factors listed in R.C. 2929.12 indicate a lesser likelihood of recidivism. R.C. 2929.13(D)(2)(a). The court must also find that community control would not demean the seriousness of the offense by finding

one or more of the R.C. 2929.12 factors that indicate the conduct was less serious than the conduct normally constituting the offense. R.C. 2929.13(D)(2)(b).

**{¶89}** Here the court found that the R.C. 2929.12 factors indicated a lesser likelihood of recidivism. The court noted that appellant does not have a criminal history and had led a law-abiding life prior to this offense.

**{¶90}** The court could not satisfy the second prong however, and found that appellant's conduct was more serious than that normally constituting the offense. Notably, the court found that appellant used his vehicle as a deadly weapon, the victim did not facilitate or induce the offense, and the victim suffered both physical injury and economic loss.

**{¶91}** This court has held that *Marcum* does not permit appellate courts to independently weigh the sentencing factors in R.C. 2929.12. *State v. Ward*, 7th Dist. No. 16-BE-0077, 2017-Ohio-4381, ¶ 6, citing *State v. Davis*, 7th Dist. No. 15-BE-0034, 2016-Ohio-7319 (citations omitted). In addition, "reversal or modification of a sentence in the wake of *Marcum*, 'applies to situations in which not one sentencing factor supports a stated prison term or the trial court erroneously relied on factors that did not exist.'" *Id.* at ¶ 6, citing *Davis*, 7th Dist. No. 15-BE-0034 at ¶ 5, quoting *State v. Ongert*, 8th Dist. No. 103208, 2016-Ohio-1543, ¶ 14. All that is required is that an appellate court can determine from the record that the trial court considered the relevant factors. *State v. Pyles*, 7th Dist. No. 13-BE-11, 2014-Ohio-4146, ¶ 6, citing *State v. Scott*, 3d Dist. No. 6-07-17, 2008-Ohio-86.

**{¶92}** The court found that using a vehicle as a deadly weapon made the conduct more serious. R.C. 2929.12(B) permits a court to examine any factors it deems relevant in coming to a sentencing decision.

**{¶93}** R.C. 2929.12(B)(2) states serious physical, psychological, or economic harm can be an aggravating factor. Masters testified that the accident caused bruising on his legs, knees, and chest. He also experienced soreness in his shoulder and headache. Additionally, the bicycle ruined in the accident was worth $3,800. Masters spent $5,000 to replace the bicycle with a comparable model.

**{¶94}** In terms of mitigating factors, the court found that the victim did not facilitate or induce the offense. The court found Masters' testimony convincing at trial,

which established that appellant began the altercation by "buzzing" Masters and yelling and screaming out of his truck window.

**{¶95}** Therefore, the record supports the trial court's sentence.

**{¶96}** Accordingly, appellant's seventh assignment of error is without merit and is overruled.

**{¶97}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P. J., concurs

Bartlett, J., concurs

Case No. 17 CO 0016

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**